CALEB HOWARD AND THE REST OF THE INHABITANTS OF THE FIRST ECCLESIASTICAL SOCIETY IN POMFRET v. WALDO.

The court will not, on a motion, decide a question relating to the power of agency which involves in it the merits of the cause to be tried.

Where a number of persons dissent from the same church, etc. and form themselves into a church or society separate from the other church and society— there is no need of their lodging any certificate, etc. and they thereupon become disabled to vote in said first society, except in matters pertaining to schools and schooling.

ACTION of trover for the society's book of records conversion laid, in February A. D. 1793.

The defendant challenged the power of the agent who appeared, to prosecute in behalf of the plaintiffs; because he was not regularly appointed.

The facts were — That on the 1st day of December, A. D. 1792, a new voluntary society was confederated and formed, consisting of the members of said first society; by the name of the Catholic Reformed Christian Church and Congregation; and contained the greater part of the legal voters, which belonged to said first society; which confederation and agreement was kept concealed. On the 19th of December the annual society meeting was held in said first society, and all the legal voters in the old and new formed society, were present and voted in the choice of a committee, and of the defendant to be clerk. On the 29th of the same December the Reformed Catholic Church, etc. met pursuant to a regular warning, chose a moderator, clerk and committee; and voted to give Mr. Dodge a call to settle amongst them in the work of the gospel ministry, and on the 6th of January A. D. 1793, he was ordained. On the 8th of February A. D. 1793, the first society, pursuant to a warning given, to all the legal voters in said society, exclusive of the members of said new Catholic society, for that purpose met, and in legal meeting, voted that Samuel Waldo, and two of said committeemen chosen on the 19th of December aforesaid, had gone off from them and joined said Catholic Reformed Society, etc. whereby their offices had become vacant — and then pro-

ceeded and chose a clerk, and two committeemen in their room, and appointed Capt. Seth Grosvenor an agent to commence and prosecute this suit for said book of records, by twelve voters; being all that were left in said first society. Against which appointment, thirty-seven voters belonging to said Catholic Reformed Society, voted and protested.

The question upon this state of facts was— Whether the agent was legally appointed. The court were unwilling in this summary way to give a peremptory answer to a question, which entered so deeply into the merits of the cause. As the agent had got a formal appointment of record by the first society in Pomfret, he had right to appear and prosecute; whether that body, the twelve voters who appointed him, were the first society in Pomfret or not, was the question to be decided upon the merits. The defendant plead not guilty. Issue to the jury.

In the cause upon the merits the written covenant and confederation of the Catholic Reformed Church and Society was produced and read: In that they expressly declare, " that they do covenant and confederate together agreeable to the law, entitled an act securing equal rights and privileges to Christians of every denomination in this state," which agreement was subscribed by them individually. None of them had lodged any certificate with the clerk of said first society — and claimed a right still to vote in the first society, in all matters equally as before said association.

The jury found a verdict for the defendant, from which the court dissented, and delivered to the jury their opinion upon the law — as follows:

The design of this statute is to secure to every denomination of Christians equal rights and privileges, and to give to all liberty to worship God, according to their consciences, and to prevent every kind of intoleration and oppression either towards the dissenters, or those dissented from.

The law goes upon the idea, that public social worship of the Deity, is a part of natural, as well as revealed religion; indispensably obligatory upon every individual, and essential to the well being, peace and happiness of society.

The first paragraph provides how an individual, who conscientiously dissents from the church or society to which he

belongs, may regularly separate from it, and join to another church and society of a different denomination, by lodging a certificate of his .dissent, and choice of the church or society to which he is joined.

The second paragraph is conversant about dissenting churches and congregations, which were already formed; or which may hereafter be formed, for the purpose of public social worship among themselves; granting to them certain powers and privileges, as of building meeting-houses, settling and maintaining ministers, etc. etc. And every person who claims the benefit of either paragraph of this act, is disqualified to vote in any meeting of such first society, except in matters which relate to schools.

The Catholic Reformed Church, etc. associated themselves into a church state; they went off in a body; the instrument containing the articles of their union is evidence of their having separated, and having become a church by themselves; and they expressly claim the benefit of this law in their very act of incorporation; and for them after this to control said first society in their meetings, by their superior numbers, is a perverting of the privilege the law granted to them, to the oppression of their neighbors in the first society.

The jury went out and returned with a verdict in favor of the plaintiffs, and £15 damages.

Upon a suggestion from the bench, that as the right was the principal question, and the book of records could be of no use to any but the plaintiffs, and that the book and not damages, was the object of the suit, the parties had better compromise the matter. Col. Grosvenor who was present, declared in behalf of the defendants and said Catholic Society, that he acquiesced in the decision of the court, and that the book should be delivered. The damages were remitted to forty shillings.

I would observe, that although this is the law where a new church is wholly or principally formed from one society, yet, should a new church be formed, by taking a few members from a number of other churches, the law might be otherwise, and it would be necessary for them to lodge certificates agreeable to the first paragraph of the law.