This is a motion, on the part of the respondent, to dismiss the appeal on the ground that Joseph Fellows, the original plaintiff and appellant, in his lifetime, viz., on the 26th of June, 1871, entered into an agreement with the respondent that the appeal should be forthwith discontinued and that the respondent should forthwith take possession of the property, etc., conveyed by the deeds, to set aside which the action was brought, and should pay all costs of the appeal; that on the same day Mr. Fellows signed a written direction to his attorneys to discontinue the appeal, and on the eighth of July following entered into a written stipulation with the respondent that the appeal be dismissed, and that an order to that effect be entered by the clerk of this court.
A motion to dismiss the appeal, founded on the same instrument, was made in this court in November, 1871, and was opposed on affidavits showing that those instruments were executed by Mr. Fellows in the absence of and without consultation *Page 398 
with his attorney and counsel, and charging that they had been obtained from him by undue influence while he was, by reason of great age and infirmity, incompetent to act voluntarily and intelligently in the matter.
The motion papers not being sufficiently full to enable the court to arrive at a satisfactory conclusion at that time, but sufficient appearing to show that the motion should not be granted without further investigation, it was, on the 21st of November, 1871, denied, but without prejudice to the right to renew.
No further steps appear to have been taken in the case until November, 1873, at which time (the plaintiff and appellant, Joseph Fellows, having died in April, 1873), a motion was made and granted that the present appellants, his administrator and administratrix, be substituted in his place. The appeal was then noticed for argument.
In January following (1874) the motion to dismiss was renewed upon further voluminous papers tending to repel the charges of incompetency and undue influence. The hearing of the motion was postponed from time to time until September, 1874.
The appellants now take the objection that the respondent has been guilty of laches in not availing himself earlier of the privilege of renewing the motion, and that he should not now be heard. For the delay which has occurred since the death of Mr. Fellows some excuse may be found in the papers. He died April 29, 1873, and letters of administration were not granted until August, 1873. No one was authorized to move until a proper party was substituted on the record, and this substitution did not take place until November 18, 1873. Within less than sixty days after that time the notice of motion was served; and in view of the number of affidavits which it was necessary to procure, many of them from another State, and the voluminous papers prepared for the motion, this delay does not seem unreasonable. But for the delay during the interval between the denial of the original motion, November 21, 1871, and the *Page 399 
death of Mr. Fellows, April 29, 1873, a period of more than seventeen months, no excuse whatever is presented by the papers. None of the affidavits seem to have been prepared for the motion during that interval, nor any step taken in the matter, and in an ordinary case we should regard this delay as a waiver of the right to renew the motion, and as laches justifying us in refusing to entertain it.
But under the peculiar circumstances of the present case we have concluded not to rest our decision upon that ground. The motion affects important interests in which persons are concerned who do not appear upon the record, but who are interested in sustaining the alleged agreement for the dismissal of the appeal, and in preventing a reversal of the judgment. Moreover it appears, that during all the time referred to the defendant has been in undisturbed possession of the property in accordance with the judgment, and it does not appear that, until after the death of Mr. Fellows, any attempt was made to bring the appeal to argument, a step which would necessarily have brought the matter to an immediate issue, and which was in the power of Mr. Fellows or his counsel. Under all these circumstances it would seem that the matter has been allowed to rest by the tacit consent of both parties, and that we ought to consider the application upon its merits.
The action was brought in November, 1869, to set aside two deeds from Joseph Fellows to his nephew, John Hermans, the respondent, on the ground that they were obtained by fraud, and also on the ground that they were revocable and had been revoked. One of the deeds was dated October 10, 1868, and conveyed to the defendant, as trustee, all the real and personal estate of the grantor, and provided that the defendant should sell the lands, by retail, for the best prices that could be got for the same, and convey them, in fee simple, to purchasers with warranty, and until sold that he should rent them; that he should collect all debts due the grantor, and that the avails of the real and personal estate should be applied, first, to the payment of the expenses of the trust, including five per cent commission to the trustee; and, *Page 400 
secondly, that during the life of the grantor the residue should be paid over to him or appropriated to his use under his direction; and, thirdly, that after his decease and after the payment of his just debts, the residue should be distributed as directed in a supplementary writing to be thereafter executed, or in default of such writing among the grantor's heirs according to the laws of this State.
The other deed was dated the 15th of October, 1868, and gave directions for the distribution of the residue which was, by the deed of October tenth, directed to be distributed after the grantor's death. It directed certain small annuities to be paid to the brothers and sisters of the grantor and to some of his nephews and nieces; the conveyance to his niece, Mrs. Phebe Wynkoop, of a farm of 175 acres, with remainder to her children; the conveyance to N.T. Wynkoop, in fee, of a farm of about 100 acres, and a life estate to the grantor's brother Sylvanus and his wife, in a house and garden occupied by them, and the residue to be distributed among thirty-four of his nephews and nieces, not, however, including all but including several whose parents were living.
Mr. Fellows was, at the time of the execution of these instruments, upward of eighty-six years of age. His estate was of the value of several hundred thousand dollars. The defendant was one of his nephews and had been for some time previous his confidential clerk and agent, having, to a certain extent, the charge of his business. The deed of October tenth recited, that from infirmities and advanced age he deemed it expedient to make the conveyance, and he testified on the trial to the same effect, and that he thought matters should be left so that the sales of his property might be continued, and that led to the execution of the papers; that the defendant was with him and he had confidence in his integrity and skill in business. The court found on the trial that the deeds were executed and delivered voluntarily, and without any fraud, deceit, undue influence or undue persuasion, or any misrepresentation whatever as to their contents or legal effect, but that the plaintiff entertained the *Page 401 
idea that he could revoke, annul or alter the instruments at any future time; and that in case he should so revoke or annul, the property would revert and be restored to him. The court held that the deeds were valid and the trusts created thereby valid and irrevocable, and rendered judgment in favor of the defendant at Special Term, which judgment was affirmed at General Term by a divided court on the 10th of April, 1871. On the 11th of April, 1871, Mr. Fellows, by a letter written entirely by his own hand, instructed his attorneys, Messrs. Bradley and Kendall, that it was his intention to have the case carried to the Court of Appeals, and directed them to submit to Mr. David Rumsey, as their associate counsel, whatever they might do in the matter. On the same day this appeal was taken, and Mr. Fellows, from that time to the twenty-fourth of June following, consistently declared his intention to prosecute the appeal and his desire to regain the control of his property.
During the litigation the property had been in the hands of a receiver, and a large amount of money had been paid over by the receiver to Mr. Fellows out of the proceeds of sales and collections as provided in the deed.
Mr. Fellows resided with his sister, Mrs. Catharine Hill, in a house belonging to himself, and had his office in the same house. Besides the management of his own business he had been for many years agent for other estates, and had control of large amounts of funds and securities belonging to them. After difficulties arose between Mr. Fellows and the defendant, one of the sons of Mrs. Hill, Joseph F. Hill, transacted business for Mr. Fellows, and it is charged that he received and misappropriated a large amount of securities belonging to Mr. Pulteney, for whom Mr. Fellows was agent, and thereby subjected Mr. Fellows to liability to his principal to the amount of over $140,000, for which judgment was recovered against him; and the defendant, during the litigation, made affidavits charging that Mr. Fellows was under the control and influence of Hill, and charges that his property was being wasted and embezzled, during the litigation *Page 402 
and in consequence thereof, and of the acts and influence of said Hill.
The transactions immediately connected with the subject-matter of this motion commenced on the 24th of June, 1871. On that day an interview between Mr. Fellows and the defendant was brought about by Mrs. Phebe Wynkoop, the sister of the defendant, or her husband, at the house of Mr. Fellows, in Corning, which resulted in Mr. Fellows going with them to their residence in Chemung, where, on the twenty-sixth of June, he executed the agreement in question for the settlement of the controversy and the dismissal of the appeal. It is alleged, on the part of the plaintiffs, that this removal was brought about for the purpose of getting Mr. Fellows under the influence and control of the defendant, and beyond the reach of his friends and advisers; that from the time of such removal Mr. Fellows was under the exclusive influence and control of the defendant, and had not sufficient mental power or strength of will to resist that influence; and that the various instruments which he then and thereafter executed were not his voluntary acts; and that intercourse between him and other members of the family, not in the interest of the defendant, was prevented.
These allegations are denied by the defendant, and numerous affidavits are produced on each side. The defendant swears that he requested Mr. Wynkoop to bring about an interview between him and Mr. Fellows, which he did on the twenty-fourth of June, and at which interview various other parties were present; that the defendant represented to Mr. Fellows (and truly) that during the litigation the money collected had been wasted and embezzled, and exhibited to him copies of the receiver's accounts, which he examined, and also a letter from Mr. Pulteney stating that Joseph F. Hill had represented to him that Mr. Fellows had been compelled to dispose of the securities of Mr. Pulteney, before mentioned, and which the defendant charges had been appropriated by said Hill; that Mr. Fellows, after reading the letter, said that the said alleged representations of Hill were not true, and *Page 403 
expressed his indignation that they should have been made; that defendant, after further conversation in regard to the management of his business, asked Mr. Fellows if he wanted to put a stop to the great leak, to which he replied that he did; that defendant then told him that he needed some one to assist him in his business and put a stop to the waste that had been going on, to which Mr. Fellows replied: "Will you help me?" and defendant assented on condition that suitable arrangements could be made and that he should not be subjected to the interference of said Joseph F. Hill, who for some time had had charge of Mr. Fellows' business, and who, on a previous occasion, had forcibly ejected defendant from Mr. Fellows' house, to all of which Mr. Fellows assented; and that defendant then proposed, for the purpose of avoiding the interference of Joseph F. Hill, that Mr. Fellows should give to defendant the control of the house and all his books and papers and go with him to some other place, and Mr. Wynkoop proposed that they should go to his house, in Chemung, all of which was done.
From Chemung, in a day or two after the execution of the agreement to settle, they proceeded to Hyde Park, in Pennsylvania, where the largest part of the real estate covered by the deeds in controversy was situated, and there caused to be discontinued a similar action to the present, which had been instituted against defendant and his brother, Edmond Hermans, and defendant and Mr. Fellows remained there at the house of said Edmond Hermans, with the exception of some short absences, until August, 1872. While there various other instruments were executed by Mr. Fellows, viz.: On the twenty-ninth of June an instrument transferring to the defendant all real and personal estate acquired subsequent to the deed of October 10, 1868; also all the right, title and interest of Mr. Fellows in the avails of his property, as provided in said deed of October 10, 1868, and providing for two nephews who had been omitted from the deed of October 15, 1868, and reserving to himself $2,000 per annum.
On the 1st of July, 1871, an instrument withdrawing his *Page 404 
revocation of the deeds of October 10 and 15, 1868. On the 6th of July, 1871, an instrument authorizing defendant to take possession of his house at Corning, and on the same day a letter to his sister, Mrs. Hill, and a notice that this action had been discontinued, and that all persons owing debts to his estate were requested to pay the same to the defendant.
The denials of any restraint or undue influence are very full, and letters and oral declarations of Mr. Fellows recognizing his new arrangements with defendant are produced. There is also a large amount of evidence tending to show that Mr. Fellows was competent to transact business.
On the other hand affidavits are produced tending to show that he was under restraint and in a state of great mental weakness, and that after the execution of these papers he was unconscious of what he had done or that he had parted with the control of his property.
In view of the disposition which we have concluded to make of this motion, we do not deem it necessary or proper to enter upon a detailed examination of the testimony, or to express an opinion upon the questions of fact involved. We have carefully examined the papers and are satisfied that they present material questions of fact. Where such questions arise and the evidence is conflicting, the better course is to leave the parties to an action, provided relief can be obtained in that form, rather than to decide the questions on a motion and on ex parte affidavits. If the appellants deem it advisable to continue the litigation and consider that they can, upon a trial, substantiate their charges of incompetency and undue influence, they can institute an action to set aside the agreement and consent to dismiss the appeal. To afford them an opportunity so to do we will order that all proceedings on the appeal be stayed for sixty days to enable the appellants to bring such action as they may be advised for the purpose of setting aside said instruments; that if such action be brought within that time, all proceedings on the appeal be further stayed until the final determination of such action, but that the defendant may move to vacate such stay if the action is *Page 405 
not diligently prosecuted. If such action be not brought within the time specified the motion to dismiss is granted.
GROVER, ANDREWS and JOHNSON, JJ., concur.
CHURCH, Ch. J., ALLEN and FOLGER, JJ. (who are for denying motion), dissent.
Ordered accordingly.