ILLINOIS CENTRAL RAILROAD COMPANY *v.* ADAMS.
ILLINOIS CENTRAL RAILROAD COMPANY *v.* ADAMS.
YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY *v.* ADAMS.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI.

Nos. 77, 78, 79. Argued October 24, 1900.— Decided January 7, 1901

An appeal to this court from a Circuit Court will not be dismissed upon the ground that, after an injunction against the collection of certain taxes was refused by the Circuit Court, and while the suit was still pending in that court, defendant brought suit in the state court and recovered the taxes in question. The defence of *res adjudicata* cannot be made available upon motion to dismiss an appeal.

Jurisdiction is the right to put the wheels of justice in motion, and to proceed to the final determination of the cause upon the pleadings and evidence. It exists in the Circuit Courts, if the plaintiff be a citizen of one State, the defendant a citizen of another, if the amount in controversy exceed $2000, and if the defendant be properly served with process within the district.

A failure to allege a compliance with the Ninety-fourth rule in equity concerning bills brought by stockholders of corporations against the corporation and other parties, does not raise a question of jurisdiction but of the authority of the plaintiff to maintain his bill.

As the bill set up a contract with the State in a railway charter, and also averred that such contract had been impaired by subsequent legislation, it was *held* that the bill presented a case under the Constitution of the United States, and that jurisdiction might be sustained upon that ground alone.

The question whether a suit, nominally against an individual by name, is in reality a suit against the State within the Eleventh Amendment to the

Constitution, is a defence to the merits rather than to the jurisdiction of the court.

Such defence should be raised either by demurrer or other appropriate pleadings, and cannot be made available upon motion to dismiss.

Motions are generally appropriate only in the absence of remedies by regular pleadings, and cannot be made available to settle important questions of law, or to dispose of the merits of the case.

As the suit was against a revenue agent appointed by the State who represented all the parties interested, to enjoin the collection of a gross sum far exceeding the jurisdictional amount, the fact that such sum when collected would ultimately be distributed in small amounts to the various municipalities interested, does not defeat the jurisdiction of the court.

No. 77 was a bill in equity filed by the railroad company, an Illinois corporation, against Wirt Adams, revenue agent, a citizen of the State of Mississippi, the railroad commission of that State, and the Canton, Aberdeen and Nashville Railroad Company, a corporation of the State of Mississippi, to enjoin the railroad commission from approving and certifying an assessment for taxes on the Canton, Aberdeen and Nashville Railroad for any of the years from 1886 to 1897 inclusive; also to enjoin the revenue agent from beginning any suit, or advising any of the counties or towns along the line of such road to bring suit for the recovery of such taxes, and for a decree adjudging such railroad to be exempt from state and county taxation for the years aforesaid.

A temporary injunction, issued upon the filing of the bill, was subsequently discharged, an appeal taken to the Court of Appeals, which was dismissed for the want of jurisdiction, and a final decree subsequently entered in the Circuit Court dismissing the bill with the following certificate upon the questions of jurisdiction:

"1. That the complainant in its original bill showed no jurisdiction on the ground of diversity of citizenship. Defendants claim that its interest was derivative through the Canton, Aberdeen and Nashville, and that the complainant had no right to raise jurisdiction in the Federal courts by making the Canton, Aberdeen and Nashville Railroad Company a party defendant in the cause.

"2. That the complainant by its original bill showed no juris-

diction in this court because of the subject-matter stated, inas-much as the bill set forth no particular Federal question.

" 3. That there was no jurisdiction in this matter, because the bill was a suit against the State of Mississippi and in violation of the Eleventh Amendment to the Constitution of the United States."

*Mr. William D. Guthrie* for appellant.

*Mr. F. A. Critz* and *Mr. Marcellus Green* for appellees. *Mr. R. C. Beckett, Mr. S. Calhoun* and *Mr. Garner Wynn Green,* were on their brief.

Mr. Justice Brown, after stating the case as above, delivered the opinion of the court.

1. Motion was made to dismiss this bill upon the ground that the purpose and object of the original injunction bill have failed by reason of the fact that, (as appears from an affidavit filed by Adams in this court since the case was docketed here,) after the injunction was refused, and before the bill was finally dismissed or an appeal taken to this court, he filed a bill in equity in the chancery court of Clay County, Mississippi, against the Illinois Central Railroad Company and the Canton, Aberdeen and Nashville Company to collect the same taxes involved here, and in addition thereto the taxes for the year 1898; that the defendants in their answer set up the same defences relied upon here, which were overruled by the chancery court, and a final judgment given against the property as a paramount lien, June 16, 1899, from which decree an appeal is now pending and undetermined in the Supreme Court of the State.

The argument is that, inasmuch as the injunction in this suit was vacated by the Circuit Court, the assessment of taxes com-pleted, and suit brought upon it and judgment recovered, the appeal in this case is abortive and improper for the reason that the very things the bill was filed to prevent are accomplished facts, and the railway companies cannot be injured, inasmuch as they have a complete remedy by writ of error to the Supreme

Court of the State from this court, if any Federal question be involved and decided against them by that court.

The question which arises upon this state of facts is, first, whether a decree in an equity cause in a state court can be set up as *res adjudicata* pending an appeal from such decree to the Supreme Court of the State; and, second, whether, assuming the decree to be still in force pending the appeal, it can be pleaded as *res adjudicata* upon motion to dismiss the appeal in this court. We are of opinion that this is a defence to the merits of the case, and is no ground for the dismissal of the appeal. It would hardly be contended that, if this decree of the state court had been pronounced before the bill was filed in the Federal court, the appeal would be dismissed upon motion upon that ground; much less that it could be set up as ground for dismissing an appeal to this court. The case is not different, if the decree, instead of being rendered before the bill is filed in the Federal court, is rendered after such a bill is filed, and pending suit. In either case it is a question whether it operates as an estoppel. While the fact that an appeal has been taken from such decree, which is still pending, introduces a new element, it is still the same question whether the decree can be made available as an estoppel upon motion to dismiss.

It is true that since the injunction against him was dissolved, Adams has sued and has succeeded, but it does not follow that his judgment may not be reversed by the Supreme Court when plaintiff's right to prosecute this bill would be revived.

We think the question is practically covered by the decision of this court at the last term in the case of *Huntington* v. *Laidley*, 176 U. S. 668. In that case Huntington, as a receiver of the Central Land Company, on February 28, 1891, filed a bill in the Circuit Court of the United States against Laidley and other defendants, to set aside certain deeds which were claimed to be in fraud of the rights of the land company and a cloud upon its title. Defendants answered and set up by way of estoppel certain judgments in the state courts rendered before the bill was filed; in favor of Laidley and against the Central Land Company in an action of ejectment, and also in a suit in equity between them. The Circuit Court upon this state of

facts certified to this court whether that court was without jurisdiction, because of the pendency in the state court, prior to the suit, of the action of ejectment begun by Laidley against the Central Land Company, and also of the suit in chancery brought in the state court prior to the commencement of the case. It was held by this court that the question " whether ‎the proceedings in any or all of the suits, at law or equity, in the state courts, afforded a defence, either by way of *res adjudicata*, or because of any control acquired by the state court over the subject-matter to this bill in the Circuit Court of the United States, was not a question affecting the jurisdiction of that court, but was a question affecting the merits of the cause, and as such to be tried and determined by that court in the exercise of its jurisdiction." " The Circuit Court of the United States," said Mr. Justice Gray, " cannot, by treating a question of merits as a question of jurisdiction, enable this court (upon a direct appeal on the question of jurisdiction only) to decide the question of merits, except in so far as it bears upon the question whether the court below had or had not jurisdiction of the case." So, too, in *Reilly* v. *Bader*, 50 Minnesota, 199, it was held that a former adjudication could not be set up by motion after trial and verdict. All that was held in *Marsh* v. *Shepard*, 120 U. S. 595, was that one of several appellants cannot dismiss an appeal to this court, if the other appellants oppose such dismissal, though after the appeal was taken the Supreme Court of the State had enjoined all the appellants from enforcing their claims. Motion was denied upon the grounds that one appellant cannot control the appeal as against his co-appellants. In *Mills* v. *Green*, 159 U. S. 651, it was only held that where, after appeal taken, an event occurs which would render it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief, the court will not proceed to a formal judgment but will dismiss the appeal—in other words, that the court will not decide moot cases. In the case under consideration, however, the question still remains whether a decree of a state court can be made available as an estoppel pending an appeal to the Supreme Court, and this, as already stated, is a defence upon the merits.

As the Circuit Court certifies to this court, pursuant to section 5 of the Courts of Appeal Act, that the bill was dismissed for the want of jurisdiction, and this fact further appears on the face of the decree discharging the restraining order and overruling the motion for an injunction, the motion to dismiss must be denied.

Coming now to the three questions certified upon the subject of jurisdiction by the Circuit Court, we are next to inquire whether such jurisdiction can be supported upon the ground (1) of diversity of citizenship; (2) of a question arising under the Constitution or laws of the United States; or (3) whether it is ousted by the fact that the suit is against the State of Mississippi in violation of the Eleventh Amendment to the Constitution.

2. Plaintiff is averred to be a citizen of Illinois, and all the defendants citizens of Mississippi; but it further appears that the Illinois Central Company claims the right to bring the bill upon the ground that it is the lessee of the property and a creditor and a mortgage bondholder of the Canton, Aberdeen and Nashville Railroad Company, whose property is sought to be taxed. It seems that it was once the owner of all the bonds, amounting to $2,000,000, but for some reason a subsequent mortgage was executed, and under it bonds to the amount of $1,750,000 were issued and sold, and a like number of the first two million issue were surrendered, and a note, secured by a second mortgage, taken for the balance. The latter bonds and note are averred to have been paid for at par in good faith, and to be secured by a paramount lien, and in reliance upon the charter as valid, and upon the mortgaged premises as being free from taxation for twenty years. It is not averred in the bill that the Canton Company has ever refused to sue, or has in any way been requested to sue, by the appellant, or by any one else. The gravamen of the bill is that the Canton Company was chartered by the legislature of the State by act of February 17, 1882, and that by such charter it " was exempt from taxation for a term of twenty years from the date of approval of this act."

It is here insisted, and such seems to have been the opinion of

the court below, that the appeal cannot be sustained under the Ninety-fourth equity rule, which provides that every bill brought by stockholders of corporations against the corporation and other parties, founded on rights which may properly be asserted by the corporation, "must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law, and that the suit is not a collusive one to confer upon a court of the United States jurisdiction of a case, of which it would not otherwise have cognizance;" and must "also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action." Assuming, under the affidavit of Adams, though made only upon information and belief, that the plaintiff, the Illinois Central, owns a majority of the stock of the Canton Company, we are still of the opinion that the defence set up under the Ninety-fourth rule does not raise a question of jurisdiction, but of the authority of the plaintiff to maintain this bill. Jurisdiction is the right to put the wheels of justice in motion and to proceed to the final determination of a cause upon the pleadings and evidence. It exists in the Circuit Courts of the United States under the express terms of the act of August 13, 1888, if the plaintiff be a citizen of one State, the defendant a citizen of another, if the amount in controversy exceed $2000, and the defendant be properly served with process within the district. Excepting certain *quasi*-jurisdictional facts, necessary to be averred in particular cases, and immaterial here, these are the only facts required to vest jurisdiction of the controversy in the Circuit Courts. It may undoubtedly be shown in defence that plaintiff has no right under the allegations of his bill or the facts of the case to bring suit, but that is no defect of jurisdiction, but of title. It is as much so as if it were sought to dismiss an action of ejectment for the want of jurisdiction, by showing that the plaintiff had no title to the land in controversy. At common law neither an infant, an insane person, married woman, alien enemy, nor person having no legal interest in the

cause of action, can maintain a suit in his or her own name; but it never would be contended that the court would not have jurisdiction to inquire whether such disability in fact existed, nor that the case could be dismissed on motion for want of jurisdiction. The right to bring a suit is entirely distinguishable from the right to prosecute the particular bill. One goes to the maintenance of any action; the other to the maintenance of the particular action. Thus it was held in the case of *Smith* v. *McKay,* 161 U. S. 355, and *Blythe* v. *Hinckley,* 173 U. S. 501, that it was not a question of the jurisdiction of the Circuit Court that the action should have been brought at law instead of in equity. The question in each case is whether the plaintiff has brought himself within the language of the jurisdictional act, whatever be the form of his action, or whether it be at law or in equity. The objection that plaintiff has failed to comply with the Ninety-fourth rule may be raised by demurrer, but the admitted power to decide this question is also an admission that the court has jurisdiction of the case.

3. But we are also of opinion that the bill presents a case under the Constitution of the United States, and that jurisdiction may be sustained upon that ground alone. The bill set forth the provisions of the constitution of 1869, and the interpretation put upon it in the case of *Mississippi Mills* v. *Cook,* 56 Mississippi, 40, rendered in 1878, wherein that court construed these provisions, and declared that they did not require the legislature to tax the property of corporations for pecuniary profits; that this ruling had been repeatedly affirmed and had become the settled rule of property in the State, adopted and acted upon by the legislative, judicial and executive departments. The bill further alleged a continued course of legislative exemption of railway properties from taxation; that the railroad commission had never before denied the validity of the exemption of the Canton Company, nor attempted to assess that company for taxation; that the constitution of 1890 expressly provided that exemptions from taxation to which corporations were legally entitled at the adoption of this constitution should remain in full force and effect for the time of such exemptions, as expressed in their respective charters, or by the gene-

ral laws, unless sooner repealed by the legislature, and that successive legislatures had since the adoption of that constitution refused to repeal exemptions contained in charters theretofore granted; that the plaintiff, upon the faith of this interpretation of the constitution of 1869, and of a provision in the charter of the Canton Company exempting it from taxation for twenty years, advanced over $2,500,000 to build and equip the road; that the same was built with the money so furnished; that a lease of such road was executed to plaintiff, and that it had since been and is now in possession of the property; that the charter, with its exemption, the right to lease and the lease itself, were contracts rightfully made in view of the settled law as declared, and were valid under the constitution of Mississippi as previously expounded, and that the obligations of these contracts were binding as against any subsequent change of judicial decision. The bill further averred that the defendants, "claiming to act under laws of said State, passed subsequently to said charter and its acceptance, are endeavoring to and will, illegally, impair and destroy the obligations of said charter contract, as aforesaid, unless restrained by your honors, . . . . and that they are also attempting and claim that they have succeeded in fastening upon said railroad a first and paramount lien under acts of said State, passed in 1892 and 1894, and acts done by them in 1898 which displaces and is paramount to the lien to secure said mortgage bonds." It also denied the constitutional power of subsequent legislatures to compel the payment of taxes retroactively, while not denying its power to repeal the exemption in the charter as to future taxes, and, generally, that the contract had been impaired by the acts of the legislature ordering the assessment of the property for taxation.

The bill clearly avers a case arising under the Constitution of the United States, and is one of which the Circuit Court would have jurisdiction irrespective of the citizenship of the the parties. As we had occasion to observe in *City Railway Company* v. *Citizens' Street Railroad Company*, 166 U. S. 557, 564, " whether the State had or had not impaired the obligation of this contract was not a question which could properly

be passed upon, on a motion to dismiss, so long as the complainant claimed in its bill that it had that effect, and such claim was apparently made in good faith and was not a frivolous one." See also *New Orleans* v. *New Orleans Water Works Company*, 142 U. S. 79, 88.

4. The question whether this is a suit against the State within the Eleventh Amendment to the Constitution, which provides that the judicial power of the United States shall not be construed to extend to suits against one of the United States by citizens of another State, is also one which we think belongs to the merits rather than to the jurisdiction. If it were a suit directly against the State by name, it would be so palpably in violation of that amendment that the court would probably be justified in dismissing it upon motion; but the suit is not against the State but against Adams individually, and if the requisite diversity of citizenship exist, or if the case arise under the Constitution or laws of the United States, the question whether he is so identified with the State that he is exempt from prosecution, on account of the matters set up in the particular bill, are more properly the subject of demurrer or plea than of a motion to dismiss. This seems to have been the opinion of Chief Justice Marshall in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 858, wherein he makes the following observation: "The State not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendants; whether they are to be considered as having a real interest, or as being only nominal parties."

It may be said in a certain sense that the judicial power does not extend to civil suits (at least if begun by *capias*) against members of Congress or of the state legislatures, pending the session; or against witnesses going to, attending or returning from courts of justice; or against bankrupts for causes for action arising before bankruptcy and covered by the discharge; or against infants upon their general contracts; or against the owners of vessels who have petitioned for a limitation of liability; but it was never doubted that such power extended to an

examination of the question whether the defendant was entitled
to the exemption of liability claimed by him, and in passing
upon this question the court necessarily assumed jurisdiction
of the cause.   In the great case of *Chisholm* v. *Georgia*, 2 Dal-
las, 419, it was never intimated, either by court or counsel,
that the question of the suability of the State was not within
the jurisdiction of the court to decide, the whole argument be-
ing addressed to the question of non-liability to a citizen of
another State.   In that case the process was served upon the
Governor of the State, but as he did not appear, counsel for the
plaintiff made a motion that unless the State caused its appear-
ance to be entered judgment should be rendered by default.
This seemed to be the only method by which the court could
be called upon to pass upon the suability of the State, and was
in reality a motion for judgment.   See also *Hans* v. *Louisiana*,
134 U. S. 1.

But where the suit is against an individual by name, and he
desires to plead an exemption by reason of his representative
character, he does not raise a question of jurisdiction in its
proper sense.   As already observed, this question depends upon
the language of the statute, although the word "jurisdiction"
is frequently, and somewhat loosely, used to indicate the right
of the plaintiff to sue, or the liability of the defendant to be
sued, in a particular case.   To put a familiar test: can it be
possible that if the plaintiff company were to succeed in this
suit, the decree in its favor could be attacked collaterally as
null and void for want of jurisdiction, by reason of the fact
that the bill failed to allege a compliance with the Ninety-fourth
rule in equity, or because the defendant was really a represen-
tative of the State, and the suit was in fact a suit against the
State?

But whether this be a question of jurisdiction or not, we
think it should be raised either by demurrer to the bill, or by
other pleadings in the regular progress of the cause.   Motions
are generally appropriate only in the absence of remedies by
regular pleadings, and cannot be made available to settle im-
portant questions of law, or to dispose of the merits of the case.
*Howard* v. *Waldo*, 1 Root, 538; *Conger* v. *Dean*, 3 Iowa, 463;

*Lyon* v. *Smith*, 66 Mich. 676; *Bloss* v. *Tacke*, 59 Missouri, 174; *Chapman* v. *Blakeman*, 31 Kansas, 684; *Hill* v. *Hermans*, 59 N. Y. 396; *Oregon & Transcontinental Co.* v. *Northern Pacific Railroad*, 32 Fed. Rep. 428; *The Othello*, 1 Ben. 43; *Cushing* v. *Laird*, 4 Ben. 70.

In *Fitts* v. *McGhee*, 172 U. S. 516, where a suit was brought against state officers to enjoin them from proceeding under an alleged unconstitutional law, the question whether they were representatives of the State was disposed of upon answers filed by officers of the State.

5. The question whether the amount in controversy be sufficient to sustain this bill is not one of those certified by the Circuit Court, nor upon which that court expressed an opinion; but, assuming it to be properly before us, we think that jurisdiction cannot be defeated upon that ground. The allegation of the bill is that the taxes assessed amount to a "large sum, much more than twenty thousand dollars, to wit, the sum of ———dollars." The suit is against the revenue agent, who represents all the parties interested, to enjoin the collection of a gross sum far exceeding the jurisdictional amount. How that sum, if collected, would ultimately be disposed of, and to which and in what proportions and amounts it would be parcelled out to the several municipalities interested, is one which does not arise upon the face of the bill, and is unnecessary to be considered here. In *Walter* v. *North Eastern Railroad Co.*, 147 U. S. 370, the bill was filed by the railroad company against the officers of four counties through which the road passed to enjoin the collection of certain taxes. The amount applicable to each county was stated in the bill, and it appeared that in each case it was much less than $2000. It was held that had these taxes been paid under protest and the plaintiff sought to recover them back, it would have been obliged to bring separate actions in each county, as the amount recoverable from each county would be different, and no joint judgment could possibly be rendered. So, if the injunction had been sought in a state court, the defendants could not have been joined in one bill, but a separate bill would have had to be filed in each county. This was also the case in *Fishback* v. *Western Union Telegraph Co.*, 161 U. S.

96. These cases are quite distinguishable from those which hold that an action may be maintained for a lump sum, though such sum when collected may be subsequently distributed among various parties, each receiving less than the jurisdictional amount. *Shields* v. *Thomas*, 17 How. 3, 4; *Rodd* v. *Heartt*, 17 Wall. 354; *The Connemara*, 103 U. S. 754; *New Orleans Pacific Railway Co.* v. *Parker*, 143 U. S. 42.

In passing upon these questions we wish it to be distinctly understood that we express no opinion in this case except upon the jurisdiction of the Circuit Court to entertain this bill, and its authority to pass upon the several defences set up in response thereto. We do not say that the court may not ultimately come to a conclusion to dismiss the bill upon its own allegations, if the several questions be raised by demurrer; but we do not think it was proper to dispose of them by motion to dismiss for want of jurisdiction. The difficulty we find in the case is that the defendant has confused that which is jurisdictional with that which is not, and has attempted to forestall the ultimate action of the court by attacking its jurisdiction upon propositions which belong to the merits.

No. 78, another case between the same parties, arises upon a similar record. This was also a bill by the Illinois Central Company against the revenue agent and railroad commission of the State, and against the Yazoo and Mississippi Valley Railway Company, to enjoin the assessment of taxes on railroad property formerly belonging to the Natchez, Jackson and Columbus Railroad Company for the years 1886 to 1891 inclusive. The plaintiff sued as owner of all but four shares of the capital stock of the Yazoo Company, which company in turn owned a large part of the capital stock of the Louisville, New Orleans and Texas Company, of which plaintiff was a large bondholder. The Louisville Company had acquired by purchase the property and franchises of the Natchez, Jackson and Columbus Company, which was sought to be taxed by the assessment enjoined. The bill further set forth the consolidation of the Louisville Company with the Yazoo Company upon which the first of these cases turned, and claimed all the immunities belonging to the

constituent companies.   The same questions are presented by the record and the same result must follow.

Still another case (No. 79) is brought by the Yazoo and Mississippi Valley Railway Company, consolidated October 24, 1892, with the Louisville, New Orleans and Texas Company, whereby all the property and franchises formerly belonging to the Natchez, Jackson and Columbus Company were transferred to and became the property of the plaintiff, including which were the contract rights of the Natchez Company under section 21 of the Mobile and Northwestern charter.   This suit was brought to enjoin the collection of taxes for the year 1898 upon the property originally belonging to the Natchez and Louisville Companies.   As the plaintiff was a citizen of Mississippi no question of the diversity of citizenship arose, and jurisdiction was not claimed upon that ground.   The questions are otherwise identical with those presented in the former cases, and a similar result must follow.

*The decrees of the Circuit Court dismissing the bills in these cases for the want of jurisdiction must therefore be reversed, and the cases remanded to that court for further proceedings not inconsistent with this opinion.*