## SUMMERS et al. v. HEARST et al.

District Court, S. D. New York.
June 7, 1938.

Arthur Sherman, of New York City (Abraham Marcus and Abraham L. Pomerantz, both of New York City, on the brief), for plaintiffs.

Cullen & Dykman, of Brooklyn, N. Y. (Sigourney B. Olney, and Jules Haberman, both of Brooklyn, N. Y., of counsel), for defendants William Randolph Hearst, Jr., John Randolph Hearst, and Edward H. Clark.

LEIBELL, District Judge.

Plaintiffs in this action are stockholders of Hearst Consolidated Publications, Inc., and sue on their own behalf and on behalf of all of the holders of Class "A" 7% Cumulative Participating shares. Jurisdiction of the Federal Court is based on diversity of citizenship and the requisite controversial sum. The venue is laid in this District under Section 51 of the Judicial Code (Title 28 U.S.C.A. § 112). The individual defendants are the directors of Hearst Consolidated Publications, Inc. The corporation itself is also made a defendant.

This is the usual stockholders' action. It charges the individual defendants with having conceived a plan or design to sell various properties of private Hearst companies to the defendant corporation at prices alleged to be greatly excessive and arbitrarily fixed. The purchase price of the properties thus transferred is stated to have been the 2,000,000 shares of common stock of the defendant corporation, its two-year promissory note for $45,000,-000 and the assumption by it of certain obligations of approximately $47,000,000. The sale and transfer pursuant to said plan are alleged to have taken place on or about June 27, 1930.

There are further allegations charging the payment of excessive salaries to one of the directors in various years, the making and renewal of loans by the defendant corporation to companies owned or controlled by him and the purchase by the defendant corporation of the capital stock, assets and property of one of his private corporations at an excessive price in December 1935. It is also charged that the directors caused the affairs of the defendant corporation to be so managed as *to divert substantial income and profits from its subsidiary companies to companies privately owned by one of the defendant directors and to obtain large funds from the defendant corporation or its subsidiaries by charging high rates for purported services. The total of the excessive charges and diversion of profits in the year 1936 is alleged to have amounted to approximately $1,770,000; in 1935 to $1,600,000 and in 1934 to $1,500,000. It is further charged that the defendant corporation sold certain assets to a privately owned Hearst corporation at a grossly inadequate price. The complaint also alleges the adoption by the directors of a policy of declaring excessive dividends on the common stock of the defendant corporation, owned by one director's private corporation, which has resulted in the depletion of the working capital of the defendant corporation and may make impossible any further dividends on the Class "A" stock.

It is charged that at all times one of the directors controlled and dictated the actions of the other directors of the defendant corporation and controlled the vot-

ing stock of the corporation. Then follows the usual allegation that no demand was made upon the defendant corporation to obtain redress for the acts complained of, because of the control of the Board of Directors and of the voting stock, as hereinabove stated.

The prayer for relief asks for a cancellation of the common stock of the defendant which is held as aforesaid; that the individual defendants be required to account and pay over to the defendant corporation all profits realized by them and all loss and damage caused to the corporation by their alleged unlawful acts; that all contracts negotiated between the defendant corporation or its subsidiaries with any of the companies owned by any of the directors be cancelled and annulled, rescinded and voided; that the Court appoint a receiver of the defendant corporation, and that plaintiff's counsel be allowed a reasonable counsel fee.

Three of the directors have been served with the bill of complaint and they now move to strike from the bill of complaint (1) certain paragraphs which refer to transactions occurring prior to the date when plaintiffs allege they acquired their stock and (2) certain other paragraphs which refer to transactions, some of which occurred prior and some subsequent to said date, with leave to plaintiffs to plead anew insofar as Equity Rule 27, 28 U.S. C.A. following section 723, will permit. Defendants base their motion on the first sentence of Equity Rule 27 which provides that—

"Every bill brought by one or more stockholders in a corporation against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance."

Paragraph "4" of the complaint reads as follows:

"Plaintiffs now are and have been since December 15, 1934, the owners as joint tenants of shares of Class "A" 7% Cumulative Participating shares of stock of defendant Hearst Consolidated Publica-

tions, Inc.; plaintiffs were stockholders of said corporate defendant during the time the transactions of which they complain herein occurred; this suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance."

Although plaintiffs allege that they were stockholders during the time the transactions of which they complain occurred, a reading of the subsequent paragraphs of the complaint discloses a number of transactions to which that allegation could not truthfully apply. Paragraphs "12" to "22" of the bill of complaint all relate to a sale in 1930 of the assets of certain corporations, owned by one of the defendant directors, to the defendant, Hearst Consolidated Publications, Inc., at a price which plaintiffs claim was "many millions of dollars in excess of their true value, and in such a manner as to permit private Hearst companies to retain full control and domination thereof". This transaction occurred more than four years prior to plaintiffs' purchase of stock. Likewise in paragraph "39" there is an allegation in respect to the sale in March 1932 of Golden Gate Finance Company by the defendant corporation to a private Hearst company at a "grossly inadequate" price. In paragraphs "23", "25", "33", "37", "38", "41", "42", "43", "45", and "46" there are allegations referring to transactions, some of which occurred prior and some subsequent to December 15, 1934, the date when plaintiffs acquired their stock.

Counsel for the plaintiff contends that Equity Rule 27 does not apply to this case, because the rule is based on the Federal general law, which in this case is in conflict with the decisions of the high courts of the State of New York and of the State of Delaware. He argues that the recent decision of the United States Supreme Court in Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L. R. 1487, compels the Federal Courts to apply the local general law where it is in conflict with Federal general law, and that the doctrine of that case would include in its effect an equity rule based upon a principle of the Federal general law.

The general law of New York as established in the decisions of its highest court is not in agreement with the Fed-

eral general law or with Equity Rule 27, in respect to the right of a plaintiff stockholder to sue directors in a representative action for transactions occurring prior to the time plaintiff acquired his stock. The same is true of the general law of Delaware. The New York law is stated in Pollitz v. Gould, 202 N.Y. 11, 94 N.E. 1088, 38 L.R.A.,N.S., 988, Ann.Cas.1912D, 1098, and holds that he may do so. See, also, Continental Securities Co. v. Belmont, 206 N.Y. 7, 99 N.E. 138, 51 L.R.A.,N.S., 112, Ann.Cas. 1914A, 777. The law of Delaware, where the Hearst Consolidated Publications, Inc. was incorporated, is in accord with the New York law. Blair v. F. H. Smith Co., 18 Del.Ch. 150, 156 A. 207, 213. The Federal general law and Equity Rule 27 limit the bill of complaint to transactions occurring subsequent to plaintiff's acquisition of stock. Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827, and a line of cases, including those hereinafter referred to, discuss the reasons for the Rule.

The source of Equity Rule 27 (formerly 94) is explained in City of Quincy v. Steel, 120 U.S. 241, 245, 7 S.Ct. 520, 523, 30 L.Ed. 624, as follows:

"In the cases of Hawes v. Oakland, 104 U.S. [450], 456, 26 L.Ed. [827], 830, and Huntington v. Palmer, 104 U.S. 482, 26 L.Ed. 833, the question of the growth of the form of invoking federal jurisdiction, where it does not otherwise exist, by the attempt of a corporation, which cannot sue in the federal court, to bring its grievance into that court by a suit in the name of one of its stockholders who has the requisite citizenship, was very much considered. In order to give effect to the principles there-laid down, this court at that term adopted rule 94 of the rules of practice for courts of equity of the United States * * *."

In Illinois C. R. Co. v. Adams, 180 U. S. 28, 34, 21 S.Ct. 251, 253, 45 L.Ed. 410, this equity rule was further explained as follows:

"* * * the defense set up under the 94th Rule does not raise a question of jurisdiction, but of the authority of the plaintiff to maintain this bill. * * * It may undoubtedly be shown in defense that plaintiff has no right under the allegations of his bill or the facts of the case to bring suit, but that is no defect of jurisdiction, but of title. It is as much so as if it were sought to dismiss an action of ejectment for the want of jurisdiction, by showing that the plaintiff had no title to the land in controversy. * * * The right to bring a suit is entirely distinguishable from the right to prosecute the particular bill. One goes to the maintenance of any action; the other to the maintenance of the particular action. * * * The objection that plaintiff has failed to comply with the 94th Rule may be raised by demurrer, but the admitted power to decide this question is also an admission that the court has jurisdiction of the case."

The purpose and nature of the Rule are discussed in Venner v. Great Northern R. Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666, from which the following is quoted (page 330):

"The rule simply expresses the principles which this court, after a review of the authorities, had declared in Hawes v. Oakland (Hawes v. Contra Costa Water Co.) 104 U.S. 450, 26 L.Ed. 827, to be applicable in the decision of a stockholder's suit of the kind now under consideration. Neither the rule nor the decision from which it was derived deals with the question of the jurisdiction of the courts, but only prescribes the manner in which the jurisdiction shall be exercised. If a controversy of this general nature is brought in the circuit court and the necessary diversity of citizenship exists, but, upon the pleadings or the proof, it appears that the plaintiff has not shown a case within the decision in Hawes v. Oakland, or the rule of court declaratory of that decision, the bill should be dismissed for want of equity, and not for want of jurisdiction. The dismissal of the bill would not be the denial but the assertion and exercise of jurisdiction. So it was that in Hawes v. Oakland the demurrer was sustained and the bill dismissed, not for want of jurisdiction, but, in the words of the court (page 462 [of 104 U.S., 26 L.Ed. 827]), 'because the appellant shows no standing in a court of equity,—no right in himself to prosecute this suit.'"

On a motion similar to the one under consideration, Judge Knox of this Court, shortly prior to the decision of Erie Railroad Co. v. Tompkins, discussed Rule 27 and held that the part of the rule "relating to the time of stock ownership, is likewise an equitable principle, and applies even where no possibility of collusion is present" and he stated that in Dimpfell v. Ohio & Miss. Railroad, 110 U.S. 209, 3

S.Ct. 573, 28 L.Ed. 121, "the Supreme Court of the United States seems to have given to this portion of the rule a status equal to that of prior demand as a principle of equity." Jacobson v. General Motors Corp., D.C., 22 F.Supp. 255, 257.

If this were a question of the jurisdiction of the Federal Court, no State law or State court decision would be controlling. Mississippi Mills v. Cohn, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052. However, it is not a question of jurisdiction but of a principle of equity applicable to a stockholder's representative action. Does plaintiffs' complaint lack equity in respect to the transactions of directors that took place prior to his acquisition of stock? Venner v. Great Northern R. Co., supra. Are plaintiffs without authority to sue to set aside such transactions and for an accounting? Illinois C. R. Co. v. Adams, supra. There is no question of the application of a State statute involved. We have here a conflict of the decisions of a State court and the United States Supreme Court on a principle of equity.

The doctrine of the supremacy of the Federal general law in Federal Courts over local general law in trials at common law was announced in Swift v. Tyson, 1842, 16 Pet. 1, 18, 10 L.Ed. 865, where the Court interpreted former Section 34 of the Judiciary Act of 1789 (later § 721 of the Revised Statutes and now § 725 of Title 28 U.S.C., 28 U.S.C.A. § 725). Mr. Justice Story wrote:

"It is, however, contended, that the 34th section of the judiciary act of 1789, ch. 20, furnishes a rule obligatory upon this court to follow the decisions of the state tribunals in all cases to which they apply. That section provides 'that the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision, in trials at common law, in the courts of the United States, in cases where they apply.' In order to maintain the argument, it is essential, therefore, to hold, that the word 'laws,' in this section, includes within the scope of its meaning, the decisions of the local tribunals. * * *

"In all the various cases, which have hitherto come before us for decision, this court have uniformly supposed, that the true interpretation of the 34th section limited its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intra-territorial in their nature and character."

In the recent case of Erie Railroad Co. v. Tompkins, the doctrine of Swift v. Tyson has been disapproved and abandoned by the Supreme Court and the words "the laws of the several states" have been held to include the law of the state as declared by the decisions of its highest court, where there is no state statute declaratory of the law.

The pronouncement of the Court in Erie Railroad Co. v. Tompkins is expressed in the following sweeping paragraphs (58 S.Ct. page 822):

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.

\*  \*  \*  \*  \*  \*

"Thus the doctrine of Swift v. Tyson is, as Mr. Justice Holmes said, 'an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct.' In disapproving that doctrine we do not hold unconstitutional section 34 of the Federal Judiciary Act of 1789 or any other act of Congress. We merely declare that in applying the doctrine this Court and the lower courts have invaded rights which in our opinion are reserved by the Constitution to the several states."

In Neves v. Scott, 13 How. 268, 14 L.Ed. 140, decided in 1849, seven years after Swift v. Tyson, the Court proclaimed the freedom of Federal Courts, sitting in equity, from any compulsion to follow the decisions of the state courts. Mr. Justice

Curtis, in delivering the opinion of the Court, wrote (page 272):

"Such being the nature of the questions, we do not consider this court bound by the decision of the Supreme Court of Georgia. The Constitution provides, that the judicial power of the United States shall extend to all cases in equity arising between citizens of different states. Congress has duly conferred this power upon all Circuit Courts, and among others upon that of the District of Georgia, in which this bill was filed, and the same power is granted by the Constitution to this court as an appellate tribunal.

"Wherever a case in equity may arise and be determined, under the judicial power of the United States, the same principles of equity must be applied to it, and it is for the courts of the United States, and for this court in the last resort, to decide what those principles are, and to apply such of them, to each particular case, as they may find justly applicable thereto. These principles may make part of the law of a State, or they may have been modified by its legislation, or usages, or they may never have existed in its jurisprudence. Instances of each kind may now be found in the several States. But in all the States, the equity law, recognized by the Constitution and by acts of Congress, and modified by the latter, is administered by the courts of the United States, and upon appeal by this court.

"Such has long been the settled doctrine of this court, repeatedly and steadily affirmed in whatever form the question has been presented. In the United States v. Howland, 4 Wheat. [108] 115 [4 L.Ed. 526], Chief Justice Marshall said: 'As the courts of the Union have a chancery jurisdiction in every State, and the Judiciary Act confers the same chancery powers on all, and gives the same rule of decision, its jurisdiction in Massachusetts must be the same as in other States.' So Mr. Justice Story, in Boyle v. Zacharie et al., 6 Pet. [648], 658 [8 L.Ed. 532], says: 'The chancery jurisdiction given by the Constitution and laws of the United States is the same in all the States of the Union and the rules of decision are the same in all.' See, also, Robinson v. Campbell, 3 Wheat. [212], 222 [4 L.Ed. 372]; Livingston v. Story, 9 Pet. [632], 654 [9 L.Ed. 255]; Russell v. Southard, decided at the present term, and reported in 12 How. 139 [13 L.Ed. 927]."

In Guffey v. Smith, 237 U.S. 101, 114, 35 S.Ct. 526, 530, 59 L.Ed. 856, the Supreme Court held:

"By the legislation of Congress and repeated decisions of this court it has long been settled that the remedies afforded and modes of proceeding pursued in the Federal courts, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in those courts wherever sitting."

But Section 34 of the Judiciary Act of 1789, § 721 of the Revised Statutes, 28 U.S.C.A. § 725, was later held to apply to equity suits in the Federal Court, as Mr. Justice Brandeis notes in his opinion in Erie Railroad Co. v. Tompkins. In Mason v. United States, 260 U.S. 545, 558, 43 S.Ct. 200, 204, 67 L.Ed. 396, Mr. Justice Sutherland wrote:

"It was urged upon the argument that section 721 of the Revised Statutes, which provides that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States, by implication excludes such laws as rules of decision in equity suits. The statute, however, is merely declarative of the rule which would exist in the absence of the statute. Bank of Hamilton v. Lessee of Ambrose, Dudley, Jr., 2 Pet. 492, 525, 7 L.Ed. 496; Bergman v. Bly [9 Cir.], 66 F. 40, 43. And it is not to be narrowed because of an affirmative legislative recognition in terms less broad than the rule. The rule that an affirmative statute, without a negative express or implied, does not take away the common law (Potter's Dwarris, 68; Sedgwick Statutory Construction, 29, 30) affords an analogy. See Bailey v. Commonwealth, 11 Bush.(Ky.) 688, 691; Johnston v. Straus (C.C.), 26 F. 57, 69.

"There are numerous cases, both in this court and in the lower federal courts, where the rule has been applied in suits in equity, and while section 721 was not mentioned, it is scarcely possible that it was overlooked. See, for example, Jackson v. Ludeling, 99 U.S. 513, 519 (25 L.Ed. 460), a suit in equity, where this court held that a law of Louisiana based upon the civil law, relating to the measure of damages, was controlling."

At the time Mason v. United States was decided the doctrine of Swift v. Tyson was in force.

I am of the opinion that the disapproval of Swift v. Tyson, involving an action at law, included also a disapproval of Neves v. Scott, as limited by Mason v. United States, both suits in equity, and that the new doctrine of Erie Railroad Co. v. Tompkins, applies to both actions at law and suits in equity in the Federal Courts.

The undesirable consequences resulting from the application of the doctrine of Swift v. Tyson impelled the United States Supreme Court to revoke the doctrine. In Black & White Taxi Co. v. Brown & Yellow Taxi Co., 276 U.S. 518, at page 532, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426, which was an action in equity for an injunction, Mr. Justice Holmes pointed out some of the undesirable consequences resulting from an application of the doctrine of Swift v. Tyson. Those undesirable conditions could be found not only in the application of the doctrine to actions at law, but also to suits in equity. In describing the conditions that the Court sought to remedy, Mr. Justice Brandeis wrote:

"It [Swift v. Tyson] made rights enjoyed under the unwritten 'general law' vary according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen. Thus, the doctrine rendered impossible equal protection of the law. In attempting to promote uniformity of law throughout the United States, the doctrine had prevented uniformity in the administration of the law of the state." Erie Railroad Co. v. Tompkins, supra.

■ Another point raised in the present case is whether this second requirement of Equity Rule 27, 28 U.S.C.A. following section 723, as to stock ownership falls on the side of procedural law or on that of substantive law. Mr. Justice Reed in the concurring opinion in the Erie Railroad Co. v. Tompkins case states:

"The line between procedural and substantive law is hazy, but no one doubts federal power over procedure."

The federal cases that discuss this section of Rule 27 support the view that it states a principle of substantive law. However, in discussing the Hawes v. Oakland Case Judge Hiscock in his opinion in Pollitz v. Gould, supra, stated that the Unit-

ed States Supreme Court—" * * * seems to have been more concerned with establishing this rule as one of practice than of substantive law." But he adds that—"* * * whether it be regarded as establishing a principle of law or a rule of practice, this authority has been subsequently followed in the United States courts."

If the principles announced in Hawes v. Oakland, supra, had not been embodied in an equity rule promulgated by the Supreme Court, I might feel compelled in obedience to the new doctrine of Erie Railroad Co. v. Tompkins to follow the New York decision of Pollitz v. Gould, supra. But faced by Equity Rule 27 in its present form I hold that it applies to this case. Noonan v. Braley, 2 Black 499, 67 U.S. 499, 17 L.Ed. 278. If equity Rule 27 is to be modified or revoked in view of Erie Railroad Co. v. Tompkins, it is not the province of this Court to suggest it, much less impliedly to follow that course by disregarding the mandatory provisions of the Rule.

There are States in which the doctrine of Hawes v. Oakland is also the local general law. See cases cited in Hawes v. Oakland, supra; in Pollitz v. Gould, supra; in Jacobson v. General Motors, supra, and in 14 C.J. 936–7. In such States there would be no inconsistency between Equity Rule 27 and the local general law, and the Erie Railroad Co. v. Tompkins doctrine would not affect the application of Rule 27.

■ Of course, some other stockholder, whose ownership of stock dates back to the time of the transactions complained of, could maintain this suit for the benefit of the defendant corporation and all its preferred stockholders, including these plaintiffs. While I sustain defendants' contention that Equity Rule 27 applies to the bill of complaint in this suit, I am impressed by the argument of plaintiffs' counsel that the paragraphs to which defendants' motion is directed are necessary to the proof of the alleged wrongful acts occurring thereafter and that the bill of complaint alleges a continuing conspiracy with respect to all of the alleged wrongful acts of the defendant directors. I am referred to the case of Jacobson v. General Motors, supra, where Judge Knox permitted certain allegations to stand on the theory that they constituted "matters of inducement to the state of affairs that

ultimately came into existence", and also other allegations on the theory that they "may possibly be necessary in order to show the development of the plan and scheme." The trial court will have before it both the bill of complaint and the evidence offered in support of the allegations contained therein and that Court will be in a better position to determine how material and relevant matters covered by those allegations are to the complete presentation of the situation existing when the transactions that fall within Equity Rule 27 occurred. I do not believe that the application of Equity Rule 27 on a motion of this kind requires the Court to so alter the bill of complaint that its remaining allegations would become disconnected and isolated, lacking the alleged chain of the plan or scheme which plaintiffs contend connects all of the acts complained of and reaches back to the organization of the defendant corporation in June 1930.

Defendants' motion is denied, not because Equity Rule 27 does not apply, but for the reason that its arbitrary application on this motion would be inequitable.