## BAILLIE v. BACKUS et al.

### (District Court, D. Oregon. March 6, 1916.)

### No. 7067.

1. REMOVAL OF CAUSES ⬉49(1)—CITIZENSHIP OF PARTIES—SEPARABLE CONTROVERSIES.

Plaintiff, a citizen of Oregon, owned 5 per cent. of the stock of an Oregon mining company, and corporations controlled by B. owned the other 95 per cent. B., the corporations controlled by him, and their other officers had misappropriated surplus funds of the mining company and converted them to their own use and benefit, and plaintiff sued them for an accounting, also naming the mining company as a defendant. The complaint went into minute detail as to the misappropriations, showing that they were sometimes made through B.'s machinations, sometimes through the acts of one or other of his companies, and sometimes by other officers of such companies; but in several parts of the bill defendants were charged jointly with participating in the misappropriations, and from the whole bill it was apparently drawn on the theory that there was a joint participation by the defendants named in a common scheme to withdraw the surplus funds of the mining company, with a view to preventing plaintiff from obtaining his just share of the profits. The defendants other than the mining company were all nonresidents of Oregon. Held, that there was no separable controversy between plaintiff and B., and the suit was not removable, as there was no joinder of separate causes of action, but only a particularization of different items of misappropriation, all entering into and forming elements of the general accounting demanded.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 95, 98, 99; Dec. Dig. ⬉49(1).]

2. REMOVAL OF CAUSES ⬉61—DETERMINATION OF RIGHT OF REMOVAL.

The right of removal depends upon the case disclosed by the pleadings when the petition for removal is filed.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 115; Dec. Dig. ⬉61.]

3. REMOVAL OF CAUSES ⬉61—CITIZENSHIP OF PARTIES—SEPARABLE CONTROVERSIES.

Where a joint recovery against several defendants is claimed upon a cause of action which justifies a joint recovery, there is no separable controversy, though plaintiff might have elected to present a separable controversy with one of the defendants.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 115; Dec. Dig. ⬉61.]

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. REMOVAL OF CAUSES ⬤═37—CITIZENSHIP OF PARTIES—REARRANGEMENT OF PARTIES.

In a suit by a minority stockholder in an Oregon corporation, who was a citizen of Oregon, for an accounting by nonresidents of Oregon respecting funds of the corporation misappropriated by them, the corporation could not be aligned on the side of plaintiff in determining the right of removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 80; Dec. Dig. ⬤═37.]

In Equity. Suit by Frank S. Baillie against E. W. Backus and others. On motion to deny continuance of a temporary restraining order and to remand. Preliminary injunction dissolved, and cause remanded.

The E. W. Backus Lumber Company is a Minnesota corporation, with principal office at Minneapolis, of which Backus was president, A. E. Horr treasurer, and up to the time of his death, namely December, 1897, R. C. Leavitt vice president. A. E. Horr was the father and R. C. Leavitt the uncle of the wife of Backus, and said corporation was in all matters dominated and controlled by Backus. Backus-Brooks Company, a Minnesota corporation, having its principal place of business at Minneapolis, is the successor in interest of the E. W. Backus Lumber Company, and is under the same control and management as the E. W. Backus Lumber Company.

On August 17, 1896, R. C. Leavitt, acting on behalf of the E. W. Backus Lumber Company, entered into a contract with Henry Cable, Marion Cable, and Erwin Cable to lease and purchase from them what is known as the Columbia mine, later owned by the Columbia Gold Mining Company. By the terms of the contract Leavitt was to enter into the possession of the property by October 1, 1896, operate the same, and commence the construction of a mill for reducing ore, and was to pay for the property $80,000, as follows: $10,000 in cash, $10,000 by January 1, 1897, and $20,000, on the dates, respectively, of January 1, 1898, January 1, 1899, and January 1, 1900—the said $10,000 cash having been paid by E. W. Backus Lumber Company. E. W. Backus Lumber Company entered into possession of the property before October 1, 1896, constructed a mill, and, prior to the incorporation of the Columbia Gold Mining Company, paid the January 1, 1897, installment of $10,000.

In September, 1896, Backus, acting for the E. W. Backus Lumber Company, employed plaintiff to act as agent and representative of the company in disbursing moneys to be expended in its behalf. In discharge of his trust, plaintiff paid out, at the request of the company, $1,000, and about January 7, 1897, entered into a contract with the E. W. Backus Lumber Company whereby plaintiff became the active manager of the Columbia mine, and it was agreed that plaintiff should have the privilege of purchasing a 5 per cent. interest in the equity then owned by the E. W. Backus Lumber Company in the Columbia mine for $5,000; $1,000 thereof being acknowledged as paid, and the remaining $4,000 to bear interest at 8 per cent., and to be paid at the convenience of plaintiff within five years, either out of the profits of the operation of the mine or otherwise. It was further agreed that the Lumber Company should complete the purchase of the Columbia mine, and upon payment by plaintiff of the $5,000 that plaintiff should own an interest equivalent to 5 per cent. in the property, and that in case a corporation should be formed plaintiff should have 5 per cent. of the total authorized capital stock thereof fully paid up, with the privilege on the part of the Lumber Company of purchasing back the said 5 per cent. interest, or of the stock as the case might be, under certain conditions.

The Columbia Gold Mining Company was incorporated July 31, 1897, with an authorized capital stock of $150,000, divided into 1,500 shares, at $100 per share; its principal office being at Baker City, Or. On July 31, 1897, the Lumber Company had paid out, in connection with the Columbia mine, $33,-538.39, and plaintiff, under his contract to purchase a 5 per cent. interest, $1,888.50, and there was owing to Cable Bros. $60,000, and some current obligations. The instructions of E. W. Backus, president of the E. W. Backus

Lumber Company, were followed in all things relating to the incorporation of the Columbia Gold Mining Company. R. C. Leavitt was elected president, A. E. Horr treasurer, R. L. Horr secretary, and plaintiff vice president and general manager.

Leavitt, also under instructions of Backus, assigned his contract with Cable Bros. to plaintiff, for the consideration as expressed in the assignment of $40,150.65, no part of which was paid by plaintiff, and plaintiff assigned said contract to the Mining Company in consideration of the issue by the Mining Company to him of 1,500 shares of its capital stock; and thereupon, by instructions of Backus, plaintiff caused 75 shares to be issued to himself, one share each to two other parties to qualify them to act as directors, and the balance of 1,423 shares to the E. W. Backus Lumber Company. About August 19, 1897, through negotiations of Backus and Cable Bros., the latter conveyed the mining property covered by the Leavitt contract to the Mining Company, and that company executed its mortgage to Cable Bros. to secure the payment of the postponed three installments of $20,000 each, which were subsequently paid at maturity by the Mining Company, and no part thereof was paid by the Lumber Company.

Up to about May, 1899, the mine was running at a loss, which then aggregated the sum of $65,517.18. Thereafter, during and following the month of May, in 1899, the mine produced, over and above current expenses, $130,981.06, which sum, under directions from Backus, was remitted to Horr, the treasurer at Minneapolis; and during the time Backus removed plaintiff as manager and secured the resignation of the directors holding one share of capital stock each, but subsequently reinstated plaintiff as manager. Of the moneys remitted to the treasurer, Backus, without the knowledge of plaintiff and without the corporate action of the Mining Company, fraudulently and wrongfully embezzled and took from the treasury, and converted to his own use, divers sums, charging them to divers accounts, which are set out, aggregating $103,174.50, and caused the entry thereof to be made in the books of the Mining Company during the year 1900. By withdrawing from the treasury the said sum of $65,517.18, the total investment made by the Lumber Company for the mine prior to 1898, and by misappropriating and withdrawing from the treasury the sums of money stated, the Mining Company was defrauded of the sum of $103,174.50, and plaintiff was defrauded of the sum of 5 per cent. interest therein, to wit, $5,158.73, and said moneys so wrongfully misappropriated, if properly applied, would have completely paid up and discharged the balance which plaintiff then owed on his stock note.

During the years 1900 and 1901 there was realized from the mine and remitted to Treasurer Horr at Minneapolis, over and above all sums used in paying off the Cable Bros.' mortgage and all sums paid for operating expenses, the aggregate sum of $190,572.28, of which sum plaintiff was entitled to have distributed to him 5 per cent. and the Lumber Company 95 per cent., and, if said sums of $103,174.50 and $190,572.28 had been so distributed, plaintiff's stock note would have been paid in full, and there would have remained about $8,000 which plaintiff would have been entitled to have distributed to him; and the defendants Backus, Backus-Brooks Company, and the Lumber Company, without the knowledge or consent of plaintiff, wrongfully misappropriated all said moneys, and pretended to loan the same to corporations of which they were the owners and in control, and in which the Mining Company had no interest, and expended them upon other concerns promoted by Backus. Defendants refused to apportion any of said sums of money until the year 1909, when Backus, without corporate action, but with the consent of plaintiff, distributed of the surplus funds of the Mining Company the sum of $230,000, of which there was paid to Backus the sum of $218,500, and the remainder, to wit, $11,500 to plaintiff.

After 1909 the earnings of the Mining Company to the extent of $100,000 were distributed, to plaintiff 5 per cent., and to Backus, president of the Lumber Company, 95 per cent., all without corporate action, and all by the acquiescence of the Lumber Company. Since about 1908 no meeting of the stockholders or of the board of directors of the Mining Company has ever been held within the knowledge of plaintiff, or, if any such has been held, it

has been without notice to plaintiff; but Backus assumes to act as president and Brooks as treasurer of the Mining Company. About April 26, 1915, Backus directed plaintiff to close down the mine on September 1, 1915, and at said time there was on deposit in the First National Bank of Baker City the sum of $15,000 over and above all sums necessary to pay all liabilities of the Mining Company up to September 1, 1915, and there were in transit ore and bullion shipments aggregating $7,000, making in all in cash assets a sum exceeding $22,000.

At said time there should have been in the treasury of the Mining Company, in addition to the cash assets of $22,000, a sum exceeding $300,000; but by report of Brooks, the treasurer, there was made to appear on hand but $143.59, and the balance of said money was covered by fictitious and fraudulent entries and loans to Backus-Brooks Company and other companies controlled by Backus and Brooks, and advances made and charged against other corporations of which Backus was the promoter. At said time plaintiff, for his own protection, drew out of the First National Bank as his own $14,756.83, and with said sum purchased two certificates of deposit, one for $5,829.55 and the other for $8,927.28, and placed the same in his own safety deposit vault in said bank, and notified defendants of what he had done, and that such certificate would be so held by plaintiff until an accounting was had for the misappropriation of the funds of the Mining Company by the defendants. Thereupon Backus' private attorney pretended to remove plaintiff as manager of the Mining Company, and to assume control thereof himself. The mine and all assets were surrendered to the attorney August 27, 1915.

The Mining Company has commenced an action at law against the bank to recover the money withdrawn by plaintiff, which sum was tendered into court by plaintiff on the commencement of this suit, to await the final determination thereof. Backus and his attorney are about to remove all the books and all vouchers, documents, and papers relating to the transactions of the Mining Company from the state, and will do so unless restrained. The entries in relation to the misappropriation of funds made by the defendants were made, in the Mining Company's books at the mine, long after such appropriations were made under the direction of Backus, and if such books and papers are permitted to be shipped away, it will leave plaintiff without available evidence to support his allegations for relief. On a proper accounting plaintiff would be found to be entitled, not only to the certificates of deposit, but to $20,000 additional, and defendants have refused an accounting.

All defendants are nonresidents of the state of Oregon except the Mining Company. Owing to the Mining Company being controlled by Backus, plaintiff is unable to secure relief from the company, on account of the defendants' owning and controlling 95 per cent. of the capital stock and refusing to act in this matter for the benefit and protection of the Mining Company and plaintiff, or either of them.

The foregoing is a brief summary of the complaint. An accounting is prayed in favor of plaintiff and the Mining Company, and against all the other defendants, except Richardson, and between plaintiff and the Mining Company and said defendants, and between the Mining Company and defendants other than said company, and that the sum to which plaintiff may be found to be entitled shall be decreed a lien upon the property of the Mining Company.

The suit was commenced in the state court. The defendants, except the Mining Company and Richardson, were served in Minneapolis, Minn., and after the time for answering had expired under such service, and default was entered, Backus petitioned the state court for a removal of the cause to this court. Upon hearing had, the state court refused to grant the prayer of the petition, but retained the cause. Backus, feeling aggrieved, brought the record here, and sued out an injunction against plaintiff's proceeding further in that court. A temporary restraining order was issued, and the cause now comes up for hearing on a motion to deny a continuance of the order and to remand the cause to the state court.

William Smith, Jas. H. Nichols, and John L. Rand, all of Baker, Or., for plaintiff.

Samuel White and John H. White, both of Portland, Or., and Harris Richardson, of St. Paul, Minn., for defendants.

WOLVERTON, District Judge (after stating the facts as above). Two questions are presented for decision, namely, whether the petition for removal from the state court was presented within the time the defendant Backus was required to answer, and, in connection therewith, whether Backus had been properly served with summons, and whether there is a separable controversy as to Backus.

[1] A brief analysis of the bill of complaint will suffice to determine whether a separable controversy exists as to Backus. The plaintiff and Backus are stockholders in the Columbia Gold Mining Company; plaintiff owning 5 per cent. of the capital stock, and Backus, or certain holding companies promoted by him and now under his complete control, owning and holding the other 95 per cent. Having control of the stock, Backus controls the affairs of the Mining Company, which it is asserted he controls to the detriment of both the plaintiff and the company.

According to the bill, the E. W. Backus Lumber Company and the Backus-Brooks Company were both promoted by Backus, and these companies and Backus and other officers thereof have misappropriated funds of the Mining Company, and converted the same to their own use and benefit, resulting in a failure to account to plaintiff for his proper proportion of the profits of the Mining Company. The complaint then goes on with minute detail to state how the misappropriations came about, sometimes through the machinations of Backus, sometimes through the acts of one or other of the defendant companies other than the Mining Company, and in some things the other officers of these companies having played a part. It is as though Backus and these two Minnesota corporations were charged as conspirators to loot the treasury of the Mining Company, and in carrying out the object of such conspiracy one conspirator would do one thing at one time, and another another thing at another time, but all working together for the common purpose. Thus it is alleged in one part of the bill that, of a surplus fund of $130,981.06 produced in the year 1899, the defendant Backus misappropriated $103,174.50 by charging the same to certain accounts, 16 in number, and in a following paragraph it is further alleged that at the same time Backus was fraudulently loaning to the corporation owned and controlled by him, and known as the Backus-Brooks Company, "the large sums of money above mentioned," referring in part to the moneys misappropriated by charging the same to the 16 accounts mentioned in the preceding paragraph. In harmony with this idea, the defendants are in several parts of the bill jointly charged with participating in the misappropriations. And, taken as a whole, looking through the entire bill, the theory upon which it was drawn becomes apparent, and that is there was a joint participation by the defendants named, except Richardson, in a common scheme to withdraw the surplus funds of the Mining Company, with a view to preventing plaintiff from

obtaining his just proportion of the profits rightly coming to him; the defendant Backus controlling at the same time the wrongful action of the Mining Company. Thus the several corporation defendants are all actors, though controlled by Backus, but all are separate entities, including Backus, working to a common unlawful purpose; and it does not lie in the mouth of Backus to say that he is acting independently of the corporations, when they are controlled by his initiative.

[2] The right of removal depends upon the case disclosed by the pleadings, when the petition therefor is filed. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514.

[3] The principle governing the question of removal involved here is very clearly stated in Boyd v. Gill (C. C.) 19 Fed. 145, 148:

"It does not necessarily follow that a controversy is wholly between a plaintiff and each one of several defendants, and can be fully determined as between them, merely because such a controversy might have been presented if the plaintiff had elected to present it in that form. The controversy in a suit is the one which is actually presented, not the one that might have been. It is not wholly between the plaintiff and one of the defendants because it might have been if the plaintiff had so elected. Nor can a controversy be fully determined between a plaintiff and one of the defendants when in the form and substance which it has assumed the plaintiff insists, and has a right to insist, that so far as he is concerned it shall be determined as to both of the defendants. The controversy is the claim in form and substance as it is presented for determination; and if a joint recovery against several defendants is claimed upon a cause of action which justifies a joint recovery, the controversy is between the plaintiff and all the defendants against whom the claim is asserted."

It was determined in that case that there was a separable controversy, because directors of a corporation were joined against whom a separate action could have been maintained, and the prayer of the bill was against each defendant for a several accounting. What is meant by separate causes of action, not separable controversies, is very well illustrated in Barney v. Latham, supra, where there were joined in the same bill a cause about land and another about money. See, also, Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823.

Now, the bill of complaint in the present case does not seek a separate accounting, but an accounting by all the parties alleged to have been engaged causing the misappropriations, and, as appears from the theory of the bill, the cause is one against all the parties involved in misappropriating the funds of the Mining Company. Such is the case brought by plaintiff, and by it he is entitled to have the suit proceed in the forum of his choice. Separate causes of action are not joined, but only a particularization of different items of misappropriation, all entering into and forming elements of the general accounting demanded.

[4] Another contention is that the Mining Company should be aligned on the side of the plaintiff, and when so aligned the right of removal would exist without question. But the contention is precluded by the holding of the Supreme Court of the United States, and of the Court of Appeals of this Circuit, in analogous cases. New Jersey Central Railroad Co. v. Mills, 113 U. S. 249, 5 Sup. Ct. 456, 28 L. Ed. 949; East Tennessee, etc., Railroad v. Grayson, 119 U. S. 240, 7 Sup. Ct.

190, 30 L. Ed. 382; MacGinniss v. Boston, etc., Min. Co., 119 Fed. 96, 55 C. C. A. 648. Being satisfied that under the bill of complaint, there exists no separable controversy as to Backus, the questions respecting service and the time in which application was made for removal become wholly immaterial for a determination of plaintiff's right to have the cause remanded.

The preliminary injunction heretofore issued by this court will therefore be dissolved, and the cause remanded to the state court from whence it came.