**HENNOCK v. SILVER et al.**

District Court, S. D. New York.

May 27, 1940.

Isidor J. Kresel, of New York City (Wm. Peyton Marin, of New York City, of counsel), for plaintiff.

Jacob Meadow, of New York City (Roscoe H. Hupper, of New York City, of counsel), for defendant Edwin H. Land.

LEIBELL, District Judge.

Plaintiff, a citizen of New York, brought this suit against four defendants, one of whom, Julius Silver, is also a citizen of New York and the other three are citizens of Massachusetts. The suit was originally brought in the New York Supreme Court, New York County, but on the petition of the defendant, Edwin H. Land, who alleged that there was set forth in the complaint a separate controversy, involving more than $3,000, between plaintiff, a citizen of New York, on the one hand (or plaintiff and defendant Silver on the one hand) and the three Massachusetts defendants on the other, the case was removed to this court. Land argues that the defendant Silver, a citizen of New York, is not a necessary party to the alleged separate controversy and that it can be wholly determined without his presence.

Section 71 of Title 28 of the United States Code, 28 U.S.C.A. § 71, provides: "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."

By notice of motion, dated April 12th, plaintiff has moved this court "for an order remanding the above entitled cause to the State Court from whence it was removed as aforesaid, upon, the ground that one of the defendants, namely Julius Silver, is a resident and citizen of the State of New York, of which state plaintiff is likewise a resident and citizen, and that there is involved in this suit no separable controversy which is wholly between the plaintiff on one hand and the defendants Edwin H. Land (who obtained such removal), Helen M. Land and George W. Wheelwright, 3rd., who are residents and citizens of the State of Massachusetts on the other hand, nor between plaintiff and the defendant Silver, both residents and citizens of the State of New York on one side and the defendants, Edwin H. Land, George W. Wheelwright, 3rd. and Helen M. Land, all residents and citizens of the State of Massachusetts, on the other side,

all of which facts are apparent from said complaint, and that accordingly this Court is without jurisdiction to try and determine this cause".

The complaint alleges that until on or about April 27th, 1934, the plaintiff and defendant Silver were copartners in the practice of law in the City of New York under the firm name of Silver and Hennock (paragraph second); that Edwin H. Land was their client and was interested in various inventions and processes which he was then perfecting, including the process of polarizing light, which had a commercial value; that he was anxious to arrange for proper representation by a law firm and accordingly in September, 1928, he entered into an agreement with the firm of Silver and Hennock by which he retained them to represent him generally in connection with his inventions and to represent such corporations as he might cause to be organized in connection with his said inventions and to render such other related services as Land might request and to advance the necessary disbursements entailed in connection with this representation, "the arrangement to continue until such time as proper financial backing was arranged for exploiting said processes, inventions and said polarizer"; that Land in payment for said services agreed to "allow the firm to participate with him to the extent of, twenty percent (20%) in any and all proceeds, benefits, profits or interest, in any form or manner that the same might be, which Land should receive for said inventions, processes and said polarizer, if, as and when and as soon as proper financial backing was arranged for the exploitation thereof, and also that he would repay, at the same time, all the disbursements advanced for his account by the firm" (paragraph third).

The complaint further alleges that the firm of Silver and Hennock performed the agreement on its part, between September, 1928, and down to and inclusive of April 27, 1934, and that between April, 1934, and August, 1937, "such services and advances of disbursements were continued and completed by defendant Silver on behalf of said firm, pursuant to an arrangement between him and plaintiff" (paragraph fourth); that some time prior to August, 1937, the defendants Wheelwright and Helen M. Land became associated with defendant, Edwin H. Land "in the ownership and exploitation of said polar-

izer and the inventions and processes in which defendant Land was then interested; and at the same time defendants Wheelwright and Helen M. Land ratified, adopted as to themselves, and agreed to perform, together with Land, all of the terms and conditions of Land's aforesaid agreement with the firm of Silver and Hennock, upon the part of Land to be performed" (paragraph fifth).

The complaint then goes on to allege that about April 27, 1934, the partnership of Silver and Hennock was dissolved and that it was agreed between the plaintiff and defendant Silver that he, Silver, should complete the said agreement with Land on behalf of the firm and that the "plaintiff was entitled to receive 40% of all disbursements and of all compensation received pursuant to said agreement between Land and the firm", except that for rendering legal services after May 1st, 1935, Silver should be allowed such a fair and reasonable fee as certain arbitrators might determine (paragraph sixth); and that in accordance with said agreement between the plaintiff and defendant Silver he, Silver, on behalf of Silver and Hennock, completed the various Land and Wheelwright matters allocated to him as aforesaid (paragraph seventh).

It is further alleged in the complaint that about August 10, 1937, proper financial backing was arranged for exploiting said processes, inventions and said polarizer, and that at that time the three Massachusetts defendants through the efforts of Silver "acting on behalf of said firm of Silver and Hennock", arranged with two banking firms for suitable financial backing for the exploitation of said patents, processes and of said polarizer; that the said three Massachusetts defendants received for their interest in said patents, processes and polarizer "among other things, substantially all of the authorized common stock of Polaroid Corp., a Delaware corporation, consisting of 100,000 shares having a stated or par value of $1 per share, and all of the cumulative Class B preferred stock of said company of the par value of $5 per share, consisting of 2,500 shares" (paragraph eighth); and that by reason of the agreement between Land and the firm of Silver and Hennock, and as soon as the arrangements were made with the bankers, plaintiff and defendant Silver as former members of the firm of Silver and Hennock became entitled to receive from the Massachusetts defendants 20% of all the common stock and of all of the Class B preferred stock of said Polaroid Corporation "and of all other proceeds, benefits and considerations received by defendants Land, Helen M. Land and Wheelwright as aforesaid, together with all disbursements advanced by said firm", and that plaintiff became entitled to receive 40% thereof, less such special compensation as might be allowed to the defendant Silver by the arbitrators for the services he rendered between May 2, 1935, and August, 1937, in completing the matter of the patents, etc. (paragraph ninth).

The paragraphs of the complaint, above summarized or quoted from, contain allegations which apparently are set forth for the purpose of establishing the basis of plaintiff's right, title and interest in and to the profits realized by the Massachusetts defendants, including the Polaroid stock. If the complaint were then followed by allegations that the defendants had failed to perform their part of the agreements, and if the claim were for damages for the breach, there might be some foundation for the contention of the defendant Land that there was a separable controversy as to the Massachusetts defendants based on a breach of contract. But plaintiff by her allegations in the subsequent paragraphs of the complaint definitely bases her claim on fraud, against all four defendants as joint tort-feasors, and seeks certain relief in respect to the res that were to be the spoils of the said fraud which clearly requires the presence of the defendant Silver as a defendant in order to grant plaintiff complete relief.

The specific acts by which all the defendants sought to accomplish their alleged scheme to defraud the plaintiff are set forth in paragraphs eleventh to fourteenth of the complaint, and the object of the alleged scheme to defraud is set forth in paragraph tenth.

Paragraph tenth alleges that "defendants conceived and entered into a conspiracy, scheme and unlawful agreement to defraud plaintiff of her share of said stock of Polaroid Corporation and of such other benefits, proceeds and consideration to which plaintiff was entitled as aforesaid, and to retain plaintiff's said share for themselves and for their own use and benefit."

The first act of all the defendants in their alleged scheme to defraud was that the Massachusetts defendants made, without the knowledge of plaintiff, a payment to Silver of $22,500 which Silver purported to accept as payment in full for the services of the firm of Silver and Hennock. Evidently this is alleged for the purpose of showing how the Massachusetts defendants attempted to acquire title to and to eliminate any share or interest of the plaintiff in "the stock of the Polaroid Corporation and of the other benefits, proceeds and considerations" received by the Massachusetts defendants from the bankers (paragraph eleventh).

The next step of all the defendants in the alleged scheme to defraud the plaintiff, and for the "purpose of making more difficult the recovery by plaintiff of her rightful share", was the creation by them of a voting trust for their own use and benefit, appointing themselves (all the defendants) as the trustees thereof, and depositing therein "their Polaroid Corporation stock, including the share thereof to which plaintiff was and still is rightfully entitled as aforesaid", for which they received voting trust certificates, "which certificates defendants still own and hold."

It may be that the allegations in paragraph thirteenth of the complaint in respect to Silver's election as a vice-president of the Polaroid Corporation and his annual retainer of $10,000 a year as the corporation's counsel, alleged to have been done in furtherance of the scheme to defraud, have a bearing principally on the claim which plaintiff asserts separately against Silver and for which in the latter part of paragraph (b) of the prayer for relief she asks "that defendant Silver be required to account separately to plaintiff for such part of the fees received by him as counsel for Polaroid Corporation as this Court may determine plaintiff is entitled to". Apparently that claim would be a separate claim against Silver.

Plaintiff alleges in paragraph fourteenth that as a further part of the scheme to defraud her, defendants have concealed from plaintiff "the full nature and extent of the benefits, proceeds and considerations" received by the Massachusetts defendants for said inventions and have also concealed "the nature and terms and conditions of said voting trust, and of plaintiff's rights and interest in said benefits, proceeds and considerations and in the stock in said voting trust".

In paragraph fifteenth plaintiff alleges that by these wrongful acts of the defendants she had been "fraudulently deprived of her share in the 20% of all of the proceeds, benefits and considerations received by" the Massachusetts defendants for said invention which the defendants have wrongfully retained for their own use and benefit, and for which share the defendants have refused to account.

I am of the opinion that the complaint pleads a tort action, in fraud, against all four defendants as joint wrongdoers and seeks a joint judgment against all four defendants under paragraph (a) and the first half of paragraph (b) of the prayer for relief.

Paragraphs (a) and (b) of the prayer for relief read as follows:

"(a) That it be adjudged and decreed that defendants held and now hold twenty percent (20%) of the proceeds, benefits and considerations received by defendants Land, Helen M. Land and Wheelwright for said inventions, processes, and said polarizer, including but not limited to the stock of Polaroid Corporation and voting trust certificates therefor, and twenty percent (20%) of any and all profits derived therefrom, in trust for plaintiff and defendant Silver as former members of the firm of Silver and Hennock, and that defendants be required to account to plaintiff for her share thereof.

"(b) That defendants be required to account to plaintiff jointly and severally for their wrongful acts and conduct hereinbefore complained of, and that defendant Silver be required to account separately to plaintiff for such part of the fees received by him as counsel for Polaroid Corporation, as this court may determine plaintiff is entitled to."

For the purposes of the present motion the allegations of the bill of complaint must be taken at their face value. "The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings". Louisville & N. R. R. v. Ide, 114 U.S. 52, 56, 5 S.Ct. 735, 737, 29 L.Ed. 63; Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528; see, also, Alabama G. S. R. Co. v. Thompson, 200 U.S. 206, 218, 26 S.

Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147. Even if plaintiff might have pleaded a cause of action against the Massachusetts defendants for damages based on a breach of contract, she did not choose to do so, but has pleaded a claim based on a tort, the alleged participation of all four defendants in a common scheme to defraud the plaintiff out of her share of the proceeds, benefits and considerations received by the Massachusetts defendants from the bankers.

Defendant relies heavily on the case of Cray, McFawn & Co. v. Hegarty, Conroy & Co., Inc., 2 Cir., 85 F.2d 516. A comparison of the complaint in that action with the complaint in this action reveals a clear and basic distinction between the two cases. As Judge Augustus N. Hand pointed out in his opinion in the Cray case there was a separate claim asserted there against the removing defendant Atlas for certain specified securities that were in the separate possession of said defendant Atlas. Here, not only does plaintiff assert a claim against certain Polaroid stock but she also alleges that in order to defraud her out of it and make it more difficult for her to recover it, the defendants have deposited said stock in a voting trust, of which all four defendants are the trustees, and that voting trust certificates have been issued to them. If the plaintiff is successful in her action, part of the relief to which she will be entitled would be to have this voting trust voided so that she may receive her share of the Polaroid stock now in said trust.

In the Cray case there were no allegations of a scheme to defraud. No action in tort was pleaded. It was an action to enforce plaintiff's rights under a contract. In the case at bar we have allegations of the combination of all four defendants in a scheme to defraud her, and the purpose of the fraud as alleged in paragraph tenth of the complaint, and also allegations of specific acts of all these defendants in the accomplishment of the fraud, as set forth in paragraphs eleventh to fourteenth.

Another case cited by defendant Land on this motion is Hudson v. Texas Gulf Sulphur Co., 2 Cir., 72 F.2d 251. But in the opinion of the court in that case, in holding that the prayer asking for relief showed a separable controversy as to the Texas Gulf Sulphur Company, the court stated (72 F.2d page 254) "None of the others are necessary parties to the action against the corporation, either for an accounting or for a reconveyance. The corporation holds title to the property."

 That is not the situation here. The title to the Polaroid stock is held by all of the defendants as trustees and all are necessary parties. "Where the object of the suit is to recover possession of personal property the one in possession is a necessary and indispensable, and not a formal, party." See Salem Trust Co. v. Manufacturers' Co., 264 U.S. 182, 190, 44 S.Ct. 266, 267, 68 L.Ed. 628, 31 A.L.R. 867, citing Wilson v. Oswego Township, 151 U.S. 56, 14 S.Ct. 259, 38 L.Ed. 70; and Massachusetts & S. Construction Co. v. Cane Creek Tp., 155 U.S. 283, 15 S.Ct. 91, 39 L.Ed. 152.

The motion to remand this cause to the New York Supreme Court, New York County, from which it was removed to this court, is granted. Submit order on notice.