## LISSAUER v. BERTLES et al.

## SAME v. BROWN et al.

District Court, S. D. New York.
Dec. 28, 1940.

Abraham M. Glickman, of New York City, for plaintiff.

Jay Leo Rothschild, of New York City (Jay Leo Rothschild and Walter S. Beck, both of New York City, of counsel), for appearing defendants.

LEIBELL, District Judge.

Plaintiff, a stockholder of Industrial Acceptance Corporation, brought a stockholders derivative suit in the New York Supreme Court against three corporations and numerous individual defendants, charging them with a conspiracy to defraud the Acceptance Corporation of its assets and demanding an accounting. In that suit William M. Bertles was the first of the defendants named therein and it will be referred to as the "Bertles" suit to distinguish it from the "Brown" suit hereinafter referred to.

The corporate defendants, Morris Plan Corporation and Industrial Finance Corporation (and Acceptance), secured an order in the State Court removing the Bertles suit to this Court. The reason assigned by the corporations, all chartered by the State of Virginia, was that the complaint pleaded a separable controversy between them and the plaintiff, a citizen of New York. The individual defendants; it was claimed, were not necessary parties to a determination of that controversy and therefore their citizenship (a majority of them were citizens of New York) had no bearing upon the jurisdiction of this Court. Two causes of action were pleaded in the complaint in the Bertles suit, of which the first seems to contain a separable controversy, as to the defendant, Finance, at least. Venner v. Southern Pacific Co., 2 Cir., 279 F. 832.

After the removal of the Bertles suit to this Court plaintiff started a second suit in the New York Supreme Court between the same parties, pleading only one cause of action, alleging a conspiracy of all the defendants (except Acceptance) to defraud Acceptance and loot it of its assets. In this second suit one Vere Brown was the first of the individual defendants named therein, and this will be referred to as the "Brown" suit. The corporate defendants, Morris Plan and Industrial Finance (and Acceptance) have removed the Brown suit to this court. Plaintiff's brief states that this second suit was brought because plaintiff doubted his right to have the Bertles suit remanded, and feared that if the Bertles suit was proceeded with in this Court the relief available to plaintiff might be seriously curtailed by reason of Rule 23 (b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. He could not have based his application to have the Bertles suit remanded on any amendment to his complaint, after the suit was removed here from the State Court. Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334.

Seven motions are now before this Court in respect to these suits, as follows:

(1) A motion by the defendants, save Industrial Acceptance Corporation, to dismiss the complaint in the Bertles suit because it fails to comply with Rule 23 (b) F.R.C.P., in that it does not contain an averment that the plaintiff, Lissauer, was a stockholder of Industrial Acceptance Corporation at the time of the transactions of which he complains, or that his shares thereafter devolved upon him by operation of law.

The first cause of action in the Bertles suit is against the individual defendants (directors of Acceptance) and the corporate defendants Acceptance and Finance. No claim is asserted against Morris Plan in the first cause of action. It alleges that "in or about October, 1931" the directors of Acceptance entered into a conspiracy with defendant Finance "for the purpose of wrongfully and fraudulently depriving the stockholders of defendant Acceptance, other than defendant Finance, of their rights and interests as such stockholders, by fraudulently and unlawfully exploiting defendant Acceptance and converting its funds, assets, and good-will for the benefit of defendant Finance". Specifically it is charged that an agreement was made between Acceptance and Finance whereby Acceptance obligated itself to grant Finance a revolving line of credit up to $3,000,000; that this agreement provided that when Acceptance required repayment of the monies loaned Finance, the latter could repay the former with second preferred stock of Acceptance at a par value of $100 per share, even though the real value of the stock might then be less than $100 per share. It is alleged that pursuant to this agreement Acceptance loaned Finance sums aggregating approximately $6,000,000 and that although the greater part of this debt has been outstanding over eight years "no attempt has ever been made to compel repayment, and no part thereof has been repaid". In addition it is alleged that the agreement between Acceptance and Finance was unlawful, fraudulent, ultra vires and void because it not only violated a provision of the corporate charter of Acceptance, but also certain provisions of the Virginia Code of 1936. Part of the relief prayed for is that the agreement between Acceptance and Finance be avoided and rescinded, and that Finance repay to Acceptance all loans with interest.

The second cause of action in the Bertles suit alleges that "in or about 1930" the directors of Acceptance entered into a conspiracy with Finance and Morris Plan for the purpose of causing Acceptance "to withdraw from and liquidate its business of installment and small loan financing", in order to enable defendant Finance to "exploit the said business opportunity through its subsidiary defendant Morris Plan, 95% of whose stock was and is owned by the defendant Finance". Specific acts which brought about said liquidation of Acceptance and the diversion of its business are alleged.

Rule 23 (b) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows: "(b) Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law * * *."

Rule 23 (b) is former Equity Rule 27, 28 U.S.C.A. § 723 Appendix, which in turn evolved from a decision of the Supreme Court in Hawes v. Oakland, 104 U. S. 450, 26 L.Ed. 827. The very language of the rule was borrowed from the opinion in that case. Summers v. Hearst, D.C., 23 F.Supp. 986, 989. New York State holds contrary to the federal rule. Pollitz v. Gould, 202 N.Y. 11, 94 N.E. 1088, 38 L.R. A.,N.S., 988, Ann.Cas.1912D, 1098. But the Federal Rules of Civil Procedure apply to civil actions removed to the Federal Courts from the State Courts. Rule 81 (c), F.R.C. P.

On the oral argument it was admitted that plaintiff purchased his Acceptance Corporation stock in May or June of this year, although plaintiff's attorney now questions that fact in his brief. The complaint in the Bertles suit was verified July 18th.

Plaintiff contends that the two alleged causes of action in the Bertles suit plead continuing torts and that therefore he may bring this representative action. He quotes: "If the wrong complained of is a continuing one, a transferee of stock may sue although the wrong commenced before the transfer", from Fletcher Cyc. Corporations, Vol. 13, § 4982. Plaintiff also cites Hyams v. Old Dominion Co., 113 Me. 294, 93 A.

747, L.R.A.1915D, 1128; City of Chicago v. Cameron, 22 Ill.App. 91, affirmed, 120 Ill. 447, 11 N.E. 899; Home Fire Ins. Co. v. Barber, 67 Neb. 644, 93 N.W. 1024, 60 L.R.A. 927, 108 Am.St.Rep. 716. A reading of the bill of complaint indicates that some of the acts complained of are a continuing wrong and that there is danger that other alleged illegal acts will be consummated.

The first cause of action dealing with the alleged conspiracy for the illegal extension of credit is claimed by the plaintiff to constitute a continuing wrong because the money loaned has not been repaid, and because the alleged ultra vires contract, permitting the payment of the loan with preferred stock of Acceptance, is still unrescinded. Although it may be questionable that the unpaid illegal loans constitute a continuing tort, nevertheless under this agreement to extend credit, money may still be loaned in addition to the sums outstanding and there is danger that preferred stock of Acceptance will be used to pay off the outstanding loan.

The second cause of action deals with an alleged conspiracy to cause Acceptance "to withdraw from and liquidate its business of installment and small loan financing, in order to enable defendant Finance to exploit and profit by the said corporate opportunity", through Morris Plan, a 95% owned subsidiary of Finance. Plaintiff further alleges that, "thereafter, the business of defendant Acceptance was completely liquidated, and no further acceptances were discounted or carried on by defendant Acceptance". Apparently Acceptance ceased doing business in New York State by the end of 1936. Probably many of the acts complained of, for which an accounting is sought, are completed torts. However, plaintiff demands judgment, "enjoining defendant Finance and Morris Plan from directly or indirectly carrying on and exploiting the business fraudulently and unlawfully diverted from defendant Acceptance", and alleged continuing wrong.

■ It is unnecessary to decide at this time whether Rule 23 (b) applies to continuing wrongs, where the transaction that gave rise to the tort occurred prior to plaintiff's acquisition of his shares of stock. I am inclined to the view that if, under the alleged illegal loan agreement, further loans are threatened or there is reason to believe that preferred stock will be tendered to Acceptance by Finance in payment of the loans outstanding, then plaintiff as a stockholder of Acceptance could bring a derivative suit to prevent any such threatened damage to the corporation. I do not believe that the fact of his purchase of the stock subsequent to the making of the illegal loan agreement, if the purchase was made in good faith, would bar the stockholder from suing to prevent any further illegal and threatened transactions under the agreement.

■ However, Rule 23 (b) must be complied with, and after the proper averment is made in an amended complaint, this issue can be raised and determined on a motion for summary judgment under Rule 56, F.R.C.P., or at the trial of the action. The averment required by Rule 23 (b) does more than serve as a measure of the relief to which plaintiff may be entitled. It puts in issue "the authority of the plaintiff to maintain this bill". Illinois C. R. Co. v. Adams, 180 U.S. 28, 34, 21 S.Ct. 251, 253, 45 L.Ed. 410.

■ Defendants' motion to dismiss the complaint for its failure to contain the allegation required by Rule 23 (b) is granted. Leave to serve an amended complaint, containing the requisite averment will also be granted if plaintiff files an affidavit setting forth all the facts and circumstances of his purchase of stock of Acceptance (the date of the purchase, the price and the name of the seller); of his discovery of the facts alleged in the bill of complaint; and of his retention of the attorney who instituted this action in his behalf. This affidavit is requested because it is urged that plaintiff purchased his stock in May or June of this year and plaintiff's motives and purposes in instituting this action have been attacked. Dimpfell v. Ohio & Miss. R. Co., 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121. If I am satisfied on that point, that plaintiff did not acquire his stock in order to institute this litigation, which was one of the evils condemned in Hawes v. Oakland, supra, he will be granted leave to amend his complaint in the Bertles suit so as to comply with Rule 23 (b).

■ (2) A motion has been made by Industrial Acceptance Corporation in the Bertles suit, to quash service of the summons made August 21st and to dismiss the complaint in the Bertles suit for lack of jurisdiction of the person of the defendant Acceptance. Acceptance is a Virginia corporation but was authorized to do business in New York State from November 25, 1924 until December 19, 1936. Plaintiff

contends that service of the summons and complaint on the Secretary of the State of New York, as the agent of Acceptance, was proper under the provisions of the General Corporation Law of New York, Consol.Laws c. 23, Section 216 (1) (e), which reads as follows: "e. That it [the foreign corporation] consents that process against it in an action or proceeding upon any liability or obligation incurred within this state before the filing of the certificate of surrender of authority, after the filing thereof, may be served upon the secretary of state."

I am of the opinion that the "obligation" or duty of Acceptance to bring a suit for damages or for equitable relief against the two other corporate defendants, which then were also authorized to do business in New York, and against the individual defendant directors of Acceptance, most of whom were citizens of New York, was incurred prior to December 19, 1936, and within this state. Service of the summons and complaint on the Secretary of State of the State of New York, in the Bertles suit, pursuant to the consent required of Acceptance by the statute when Acceptance filed its certificate surrendering its authority to do business in this state, was good and proper service. Thorne v. Brand, 277 N.Y. 212, 14 N.E.2d 42; Druckerman v. Harbord, 174 Misc. 1077, 22 N.Y.S.2d 595; Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 175, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437.

█ Defendant Acceptance contends that the complaint in this suit should affirmatively show that the "obligation" was "incurred" within this State and that the Bertles complaint contains no such showing, because it contains no specific allegations that the illegal transactions took place in New York State. However, it does not allege that they took place outside the State of New York. In fact it is a proper inference from the allegations of the complaint that some of the acts complained of in the second cause of action took place in New York State, such as the diversion of the business of Acceptance to Morris Plan, and the discontinuance of further business operations of Acceptance in this State. I do not think that it is essential that the acts complained of in the Bertles suit should be alleged to have occurred in New York State. The obligation of Acceptance to bring suit against the directors, the majority of whom resid-

ed in New York and against Morris Plan and Finance, both of which were authorized to do business in New York, was incurred in New York where Acceptance could have instituted the action (Thorne v. Brand, supra), in like manner as a domestic corporation could have instituted a similar action. Section 223, New York General Corporation Law.

(3) A motion by all the defendants (save Acceptance) in the Bertles suit to consolidate it with the Brown suit is denied, because I am remanding the Brown suit to the State Court.

█ (4) A motion by defendants, similar to motion (1), based on Rule 23 (b), except that it is made in the Brown suit, is denied because the Brown suit is being remanded to the State Court, where the principle of Rule 23 (b) does not apply. Pollitz v. Gould, supra.

(5) A motion by defendant Acceptance, similar to motion (2), challenging the legality of the service of the summons on Acceptance, except that the motion is made in the Brown suit, will be left to the State Court to decide and is referred to that court together with the remand.

(6) A motion to consolidate, similar to motion (3), except that it is made in the Brown suit, is denied, because the Brown suit is being remanded to the State Court.

(7) A motion by the plaintiff in the Brown suit seeks an order remanding that suit to the New York Supreme Court. This motion will be granted for reasons hereinafter stated.

That part of 28 U.S.C.A. § 71, which is applicable to this remand motion, reads as follows: "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."

█ When a motion to remand is under consideration the complaint must be taken at its face value. Louisville & N. R. R. Co. v. Ide, 114 U.S. 52, 56, 5 S.Ct. 735, 29 L.Ed. 63; Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528; Hennock v. Silver, D.C., 34 F.Supp. 894; Baillie v. Backus et al., D.C., 230 F. 711; De Van v. Tobacco Products Corporation of Delaware et al., D.C., 19 F.Supp. 714. "The

controversy in a suit is the one which is actually presented, not the one that might have been". Boyd v. Gill, C.C., 19 F. 145, 148. See, also, Hennock v. Silver, supra. "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint". Torrence v. Shedd, 144 U.S. 527, 530, 12 S.Ct. 726, 727, 36 L. Ed. 528.

▮▮▮ The following quotations from the bill of complaint in the Brown suit indicate that no separable controversy as to either of the removing defendant corporations, Finance and Morris, is pleaded:

"Eighth: That in or about 1930, the individual defendants herein who then composed the board of directors of defendant Acceptance entered into a conspiracy with defendants Finance and Morris Plan for the purpose of diverting to the latter corporations the funds, assets, good will and the business of defendant Acceptance. Each of the remaining individual defendants herein, who was subsequently elected a director of defendant Acceptance, thereupon entered into, participated in and furthered the aforesaid conspiracy and the steps taken pursuant thereto. The acts hereinafter alleged were committed by all the aforesaid defendants in furtherance of said conspiracy."

"Ninth: * * * With the deliberate purpose and design of putting defendant Acceptance out of business, in order to seize and appropriate it for defendants Finance and Morris Plan, said defendants (other than Acceptance) caused defendant Acceptance to reject new business and to liquidate the acceptances and outstanding accounts receivable of defendant Acceptance."

"Eleventh: That commencing in or about October, 1931 and continuing to the date hereof, the aforesaid defendants have caused defendant Acceptance to lend the funds which it had procured through the aforesaid liquidation of its business, to defendant Finance which thereupon, pursuant to the aforesaid conspiracy, transmitted and made said funds available to defendant Morris Plan, in order to enable said defendants directly and indirectly to exploit the business withheld and diverted from defendant Acceptance as aforestated."

"Thirteenth: That the aforesaid loans by defendant Acceptance to defendant Finance and, indirectly, to defendant Morris Plan, were unlawful, fraudulent and ultra vires by reason of the fact that said loans enabled defendants Finance and Morris Plan to divert, exploit and benefit by the assets and business of defendant Acceptance for the sole purpose of conferring large and substantial benefits upon defendants Finance and Morris Plan, as well as the individual defendants herein, at the expense and to the loss of defendant Acceptance."

From the above quotations it appears that plaintiff is proceeding against the individual defendants jointly with the corporate defendants. A conspiracy is charged and they are all alleged to have actively participated in the conspiracy. De Van v. Tobacco Products Corp., supra.

The relief sought by plaintiff, while not controlling, throws added light on the point involved. Paragraph (a) of the prayer for relief demands judgment, "Directing all of the individual defendants herein, together with defendants Morris Plan and Finance to account to defendant Acceptance, jointly and severally, for all of the loans made by defendant Acceptance, and the profits, benefits and emoluments, and the proceeds thereof, derived and secured by the said defendants, or any of them, by reason of the acts hereinabove alleged."

Defendant relies upon the Supreme Court decision in Geer v. Mathieson Alkali Works, 190 U.S. 428, 23 S.Ct. 807, 47 L. Ed. 1122. In that case there were two corporate defendants, the Mathieson Alkali Company and the Castner Electrolytic Alkali Company. The plaintiffs were stockholders in the Mathieson Company and they sued to set aside a fraudulent conveyance from their company to the Castner Company. The directors of Mathieson were made individual defendants. An accounting and damages were sought from them severally for their wrongful acts. The plaintiffs and the individual defendants were citizens of the same state, but there was diversity of citizenship between the plaintiffs and the corporate defendants. In that case the cause of action seeking to set aside a fraudulent conveyance from the Mathieson Company to the Castner Company was distinct and separable from the cause of action seeking damages from the individual defendants. But the situation here presented is more like that stated in Baillie v. Backus et al., D. C., 230 F. 711, 716. "Separate causes of action are not joined, but only a particularization of different items of misappro-

priation, all entering into and forming elements of the general accounting demanded". The relief sought in the Brown action is for an accounting only and it is claimed that all the defendants are both jointly and severally liable for all the alleged illegal transactions pleaded in the complaint.

Counsel will submit separate proposed orders on the various motions in the Bertles and Brown suits, in accordance with this opinion. Plaintiff will also submit the affidavit requested in respect to the motion to dismiss the complaint in the Bertles suit for failure to comply with Rule 23 (b), F.R.C.P. The proposed orders are to be submitted on two days' notice.